MOTOR VEHICLE CASUALTY COMPANY, appellee, v. LEMARS MUTUAL INSURANCE COMPANY OF IOWA, appellant.

No. 50659.

(Reported in 116 N.W.2d 434)

July 24, 1962.

D. W. Baird and McMullin, Test & Baird, all of Des Moines, and H. Richard Smith and Mahoney, Jordan, Statton & Smith, all of Boone, for appellant.

Clyde Putnam, Jr., and Putnam, Putnam & Putnam, all of Des Moines, for appellee.

Garfield, C. J.—This is a law action in which plaintiff, Motor Vehicle Casualty Company, seeks contribution from defendant, LeMars Mutual Insurance Company, of half the sums plaintiff paid third persons, Mr. and Mrs. Dies and daughter and Mr. and Mrs. Carlson, injured in an automobile collision between a Plymouth car owned by Mr. Dies and a Ford car owned by Mrs. Helen Jenkins, driven by her husband, Charles. Contribution is also claimed of half the amount plaintiff paid the collision insurer of the Dies car. Following trial to the court without a jury judgment was entered against defendant from which it appeals.

Plaintiff issued to Mrs. Jenkins its automobile insurance policy on the Ford. As to coverages A and B, for bodily injury and property damage respectively, the "insured" also included her spouse. Defendant issued to Charles Jenkins its policy covering any automobile not owned by him. Limits of liability under both policies were the same—$10,000 to each person injured bodily, $20,000 for each occurrence of bodily injuries, and $5000 property damage.

The policy held by Charles was issued by defendant under the Motor Vehicle Financial Responsibility Act, chapter 321A, Code, 1958. Charles' operator's license was previously suspended for a violation of Iowa motor vehicle statutes.

Plaintiff caused an investigation to be made of the accident and after extended negotiations settled with the five occupants of the Dies automobile for the bodily injuries they sustained and State Farm Mutual Insurance Company, which wrote the collision insurance on the automobile, for 75% of the amount it paid Dies for damage thereto. Before the settlements were made, plaintiff requested defendant to enter into the negotiations and to pay a share of the settlement but it declined. No question is raised as to the reasonableness of the settlements. Plaintiff paid the five injured persons a total of $12,084.87 and State Farm Mutual $1124.56.

I. Defendant-appellant's first assigned error is, in effect, that the trial court erred in not finding that the policy it issued to Jenkins provided only excess insurance over any other valid and collectible insurance available to the insured and that the policy plaintiff issued to Mrs. Jenkins provided valid and collectible insurance to Jenkins in amounts in excess of the payments made to the injured third persons and State Farm Mutual.

Plaintiff-appellee contends that a "pro rata" other insurance clause in defendant's policy was in effect at the time of the collision notwithstanding the excess insurance provision in the endorsement, upon which defendant relies, which was attached to its policy.

The body of the policy defendant issued to Jenkins contains this provision, numbered 20 in the long list of "Conditions": "Other Insurance * * *: If the insured has other insurance

against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

Plaintiff's policy issued to Mrs. Jenkins contains a provision practically identical with that just quoted from defendant's policy. The quoted language which precedes the semicolon is commonly called a "pro rata" clause. Some of the cases refer to similar language as a standard "other insurance" clause. See e.g., General Accident Fire & Life Assur. Corp. v. Piazza, 4 N. Y.2d 659, 176 N. Y. S.2d 976, 152 N.E.2d 236, 241.

The portion of the above quoted language providing for excess insurance, commonly called an excess clause, following the semicolon is not applicable to this case. It applies only to temporary substitute automobiles and any other automobile than one owned by the named insured or spouse which is covered by the policy. No such substitute or other automobile was involved in this collision. Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 6th Cir., Mich., 273 F.2d 189, 191; Travelers Insurance Co. v. Peerless Insurance Co., 9th Cir., Ore., 287 F.2d 742, 748; Celina Mutual Cas. Co. v. Citizens Cas. Co., 194 Md. 236, 71 A.2d 20, 21, 21 A. L. R.2d 605, 607.

Attached to defendant's policy in front of the first page is an "Endorsement" headed "NON-OWNER OR NAMED DRIVER POLICY" which provides:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, and for Property Damage Liability applies with respect to the use of any automobile or truck by the named insured, only, subject to the following provisions: 1. * * *

"2. The insurance does not apply: (a) to any automobile owned by the named insured. * * *

"3. The insurance shall be excess insurance over any other

valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to any such automobile or otherwise."

Defendant's claim it is an excess insurer only with respect to the injury and damage resulting from the collision with the Dies car rests upon the last quoted provision 3 of this endorsement. Plaintiff contends the endorsement does not eliminate the "pro rata" provision, quoted above, from Condition 20 of defendant's policy.

II. The general rule is that an endorsement attached to a policy is part of the contract (this endorsement so states); the provisions of the endorsement and of the body of the policy are to be construed together and harmonized if possible; if they are in irreconcilable conflict the provisions in the endorsement will prevail. Farmers Insurance Exchange v. Ledesma, 10th Cir., N. M., 214 F.2d 495, 498; LeBlanc v. American Employers Ins. Co., 5th Cir., La., 155 F.2d 969, 970; Konrad v. Hartford Acc. & Indem. Co., 11 Ill. App.2d 503, 137 N.E.2d 855, 866, 867; Bobich v. Oja, 258 Minn. 287, 104 N.W.2d 19, 24.

To like effect are 13 Appleman's Insurance Law and Practice, section 7538, page 294; 44 C. J. S., Insurance, section 300, pages 1206–1208; 29 Am. Jur., Insurance (1960), section 256; Annotation, 48 A. L. R.2d 704, 711. See also Hawkeye Clay Works v. Globe & Rutgers Fire Ins. Co:, 202 Iowa 1270, 1274, 1277, 211 N.W. 860.

The conclusion is inescapable the provision of the endorsement that the insurance is excess insurance over any other valid and collectible insurance available to the insured is in irreconcilable conflict with the provision in the body of the policy for pro rata liability. Plaintiff itself so argues and it is obvious there cannot be at the same time pro rata coverage and coverage which is excess only as to the same loss. The many precedents which recognize this need not be cited at this point. Hence the excess clause in the endorsement to defendant's policy must prevail over the pro rata clause in the policy itself.

This endorsement contains this language which plaintiff says must be construed as retaining the pro rata clause of the policy as part of defendant's contract: "This entry and endorsement is made subject to all of the conditions of the policy

*and to such conditions as may be endorsed hereon* or added hereto; \* \* \*" and, in larger type near the bottom of the endorsement, *"Subject otherwise* to the terms, conditions and limitations of the policy." (Emphasis added.)

We think plaintiff claims too much for this language and it affords insufficient ground for not applying the rule above referred to where there is irreconcilable conflict between provisions of an endorsement and of the policy itself. Certainly the endorsement, which covers most of the first page of the policy proper, is much more conspicuous than the pro rata clause in the long list of conditions on the last page of the policy. We note too another endorsement attached to the first page of the policy contains this typed-in warning, "This policy does not afford the Broader Coverages of the Family Automobile Policy."

III. The question whether defendant must bear pro rata share (here 50%) of the loss resulting from Jenkins' collision with the Dies car or plaintiff must bear it all rests upon a construction of the language used by the respective insurers, not upon any arbitrary rule or circumstance. Travelers Indemnity Co. v. National Indemnity Co., 8th Cir., Minn., 292 F.2d 214, 221; McFarland v. Chicago Express, Inc., 7th Cir., Ill., 200 F.2d 5, 7; Woodrich Construction Co. v. Indemnity Insurance Co., 252 Minn. 86, 89 N.W.2d 412, 420, 421.

This is a question of first impression in this state. However, it has been decided in many other jurisdictions—so many it is strange defendant has not cited a single precedent that bears directly on the point. If we follow what has been said—and what our investigation reveals—is the overwhelming majority view we must hold defendant is liable only as an excess insurer over any other valid and collectible insurance available to its insured, plaintiff's policy affords such other insurance and it must bear the entire loss.

An annotation in 76 A. L. R.2d 502, 505, is entitled, "Apportionment of liability between automobile liability insurers where one of the policies has an 'excess insurance' clause and the other a 'proportionate' or 'pro rata' clause." That is the precise situation here. The annotation thus summarizes the decisions on the point: "Thus, if the nonownership coverage offered

74

by one of the polices involved is of the 'excess insurance' type, the conclusion is generally reached * * * that the *policy issued to the owner* of the vehicle is the 'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment, although the.policy contains a 'pro rata' clause. To state the proposition in another way: if one policy has been issued to the owner of the vehicle causing damage, and another covers the same loss by virtue of the relationship to the accident of one who is not the vehicle owner, the latter's insurer, at least where its coverage is of the 'excess insurance' variety, is in the favorable position and need not assume any of the loss, although the vehicle owner's policy contains a 'pro rata' clause."

5A Am. Jur., Automobile Insurance, section 172, states: "As contradistinguished from a 'pro rata' or proportionate recovery clause, some automobile * * * liability policies, provide that, as to a particular coverage, it shall be 'excess' insurance only. Under such a policy, and as to such a coverage, the insurance company issuing the policy is not liable for any part of the loss or damage which is covered by other insurance—it is liable only for the amount of loss or damage in excess of the coverage provided by the other policy or policies of insurance."

To like effect is 8 Appleman's Insurance Law and Practice, section 4914, page 400.

 These decisions are among those which uphold the view expressed in the above quotations that an excess clause in one policy prevails over a pro rata clause in another as to the same loss: Travelers Indemnity Co. v. National Indemnity Co., supra, 8th Cir., Minn., 292 F.2d 214, 221; Citizens Mutual Auto Ins. Co. v. Liberty Mutual Ins. Co., supra, 6th Cir., Mich., 273 F.2d 189, 192, 193; McFarland v. Chicago Express, supra, 7th Cir., Ill., 200 F.2d 5, 8; American Automobile Ins. Co. v. Republic Indemnity Co., 52 Cal.2d 507, 341 P.2d 675; August A. Busch & Co. v. Liberty Mutual Ins. Co., 339 Mass. 239, 158 N.E.2d 351, 354; Eicher v. Universal Underwriters, 250 Minn. 7, 83 N.W.2d 895, 900; Turpin v. Standard Reliance Ins. Co., 169 Neb. 233, 99 N.W.2d 26, 37; General Accident Fire & Life Assur. Corp. v. Piazza, supra, 4 N. Y.2d 659, 176 N. Y. S.2d 976, 152 N.E.2d 236, 241.

Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., supra, considers and cites virtually all the decisions upon the point then (1959) decided. Many precedents which reach the conclusion we do reason that a policy which provides excess insurance only on a particular loss cannot be deemed "valid and collectible insurance against such loss" within the meaning of a pro rata clause in another policy covering the same loss. Hence there is nothing on which the pro rata clause in such other policy may operate. "When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy." American Automobile Ins. Co. v. Republic Indemnity Co., supra, at page 513 of 52 Cal.2d, page 679 of 341 P.2d.

There is a minority view opposed to that above referred to which is represented mainly by Lamb-Weston v. Oregon Auto. Ins. Co., 219 Ore. 110, 341 P.2d 110, 76 A. L. R.2d 485, and federal cases applying Oregon law, such as Travelers Ins. Co. v. Peerless Ins. Co., 9th Cir., Ore., 287 F.2d 742, 748. Since the Lamb-Weston decision was filed several federal and state courts have reached a conclusion contrary thereto. See Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., supra, 273 F.2d 189, 193. National Indem. Co. v. Lead Supplies, Inc. (D. C., Minn.), 195 F. Supp. 249, points out the Lamb-Weston opinion misinterprets a precedent upon which it relies.

This from the last cited opinion appeals to us as not debatable (page 255 of 195 F. Supp.) : "An insurance company, like any other obligor under a contract, cannot be held responsible for more than it became obligated to perform. Such obligations can only be determined from the insuring agreements. Here, Casualty * * * became obligated to provide, relative to other insurers of the same risk, 'excess' insurance only. This court should not undertake to enforce its liability on a pro rata basis with any other insurer."

IV. As stated, defendant's policy was issued to Charles Jenkins under the Motor Vehicle Financial Responsibility Act, chapter 321A, Code, 1958. Defendant filed with the proper state department a certificate of issuance of the policy on a form

known as "SR 22." The policy was therein referred to as a "Named Operator Policy." The certificate bears the stamp of approval of the Director, Safety Responsibility and Drivers License Division.

We find nothing in defendant's policy that violates chapter 321A. The act does not require the insurance issued thereunder to be what is frequently called primary insurance, rather than secondary. Indeed section 321A.21, subsection 10, states, "The requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers which policies together meet such requirements." Defendant would be liable under this policy for the entire loss if other valid and collectible insurance were not available to Jenkins. Availability of such other insurance under the policy issued by plaintiff is what limits defendant's liability to that of excess insurer.

The obvious purpose of chapter 321A is to protect the public from financial irresponsibility of motorists upon our streets and highways. That purpose has been accomplished here. The injured persons have been paid. The question whether particular insurance is primary or excess is not here a matter of public concern but a concern of the companies which have extended coverage to the risk.

See in support of the views expressed in this division: Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co., 28 N. J. 554, 147 A.2d 529, 69 A. L. R.2d 1115, 1121; Continental Casualty Co. v. Weekes, Fla., 74 So.2d 367, 46 A. L. R.2d 1159, 1163. Nothing herein is contrary to anything said or held in Savery v. Kist, 234 Iowa 98, 112, 11 N.W.2d 23, 29, 30.

Defendant was entitled to a dismissal of plaintiff's action. For judgment accordingly the case is—Reversed and remanded.

All JUSTICES concur.