The **CENTRAL NATIONAL INSURANCE COMPANY,** Plaintiff,

v.

**LeMARS MUTUAL INSURANCE COMPANY OF IOWA,** Defendant.

**Civ. No. 3-679-W.**

United States District Court
S. D. Iowa, W. D.
Nov. 13, 1968.

Clyde Putnam, Jr., Des Moines, Iowa, for plaintiff.

Harold T. Beckman and John L. Peterson, Council Bluffs, Iowa, and Burton Dull, Le Mars, Iowa, for defendant.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This action was instituted by the plaintiff, the Central National Insurance Company, to recover damages arising out of the failure of defendant, the LeMars Mutual Insurance Company of Iowa, to defend certain claims against its assured, C. E. Overman. Jurisdiction is grounded upon diversity of citizenship.

The pertinent facts are substantially without dispute.

The Central National Insurance Company is a Nebraska insurance company writing automobile liability insurance, and the LeMars Mutual Insurance Company of Iowa is an Iowa insurance company likewise engaged in the business of writing automobile liability insurance policies. The plaintiff, the Central National Insurance Company, referred to hereafter as the plaintiff company, issued an automobile liability insurance policy on one Donald E. Overman of Glenwood, Iowa, which policy insured a 1952 Pontiac automobile owned by him for a policy period from January 7, 1961 to April 7, 1962. This policy provided limits of liability for one person killed or injured in the amount of $25,000, and subject to that limit the total limit of liability for more than one person killed or injured in any one accident is in the amount of $50,000, and property damages in the amount of $5,000.

The defendant company, the LeMars Mutual Insurance Company of Iowa, hereinafter referred to as defendant company, issued an automobile liability policy to one C. E. Overman of Villisca, Iowa, the father of Donald E. Overman, which insured a 1958 Chevrolet automobile for a policy period from July 27, 1961 to July 27, 1962. This policy provided limits of liability for one person killed or injured in the amount of $10,000, and subject to that limit a total limit of liability for more than one person killed or injured in any one accident in the amount of $20,000, and property damages in the amount of $5,000.

On January 6, 1962, C. E. Overman, insured of the defendant company, purchased and took possession of a 1949 Ford and a 1950 Ford automobile. He removed the engine from the 1949 Ford and installed it in the 1950 Ford. The 1950 Ford he considered to be a second automobile. At the time of the purchase and taking possession of the said 1950 Ford on January 6, 1962, he owned no other automobile other than the 1958 Chevrolet insured by the defendant company.

Donald E. Overman, the insured of the plaintiff company, having had some difficulty with his 1952 Pontiac insured by the plaintiff company, used his father C. E. Overman's 1950 Ford automobile with the latter's knowledge and consent for approximately two weeks before the accident occurred.

On February 5, 1962, at approximately 7:30 p.m. in Mills County, Iowa, Donald E. Overman while driving the said 1950 Ford automobile was involved in an accident, as the result of which one Frances Mary Buch was killed and Donald E. Overman was injured. Subsequent to that accident, Donald E. Overman commenced an action against the Administrator of the Estate of Frances Mary Buch for his personal injuries. Thereafter, the Administrator counterclaimed against Donald E. Overman and cross-petitioned against C. E. Overman, seeking damages in the amount of $75,000 for the death of Frances Mary Buch. Damages were also asked for property damage to the vehicle driven by her and owned by the Administrator.

Demand was thereafter made on behalf of the plaintiff company to the defendant company to appear and defend with the plaintiff company Donald E. Overman, their assured, and C. E. Overman, the assured of the defendant company on the said Counterclaim and Cross-Petition. This the defendant company refused to do. The plaintiff company then retained counsel to appear and defend the Counterclaim and Cross-Petition on behalf of Donald E. Overman and C. E. Overman. A trial was held which resulted in a verdict in the amount of $50,000 in favor of the Administrator of the Estate of Mary Frances Buch against Donald E. Overman and C. E. Overman, and likewise a verdict for property damage in favor of the Administrator as the owner of the car driven by Frances Mary Buch against Donald E. Overman and C. E. Overman in the amount of $1,547.50 and the costs of the action. Subsequent thereto, Donald E. Overman and C. E. Overman filed a Motion for New Trial. The court then ordered a remittitur of the said verdict to $25,000 and affirmed the property damage judgment. This remittitur was accepted by the Administrator of the Estate of Frances Mary Buch. The plaintiff company thereafter paid the $25,000.00 judgment in full, plus $1,102.74 interest thereon, and a property damage judgment, including interest, totaling $1,615.75, and court costs in the amount of $257.55. The plaintiff likewise incurred the expense of attorney fees in the defense of said Counterclaim and Cross-Petition in the amount of $2,876.10, which the parties have stipulated to be a fair and reasonable attorney fee.

The instant action was commenced by the plaintiff company against the defendant company to recover: (1) $10,000, which was the defendant company's limit of liability on one person killed or injured, plus (2) the full property damage judgment, including interest, totaling $1,615.65, plus (3) one-half of the interest of $1,102.74 on the $25,000.00 judgment, and (4) one-half of the Court costs of $257.55, and (5) one-half of attorney fees in the defense of said Counterclaim and Cross-Petition, together with interest at five (5%) percent on said amounts since the first day of April, 1965, which was the date the said judgment, interest and costs were paid by the plaintiff company.

The insurance contract of the defendant company with C. E. Overman provided as follows:

"With respect to the insurance for bodily injury liability and for proper-

ty damage liability the unqualified word 'insured' includes the named insured and, with the named insured as an individual, his spouse if a resident of the same household, and also includes any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

The policy contract with reference to a newly acquired automobile and automatic insurance thereon provided as follows:

"Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance:

"(f) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date, * * *."

The plaintiff company in its insurance contract with Donald E. Overman afforded coverage to the assured while he was driving another person's automobile with such person's knowledge and consent. The policy provided:

"COVERAGE A: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: (a) bodily injury, * * * including death resulting therefrom;

PERSONS INSURED: The following are insureds under Part I: (b) with respect to a non-owned automobile, (1) the named insured, provided the actual use thereof is with the permission of the owner; * * *."

The policy likewise provided that the insurance with respect to a temporary substituted automobile or a non-owned automobile would be excess insurance over any other valid and collectible insurance:

"Other Insurance. If the insured has other insurance against a loss covered by Part I of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability as stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substituted automobile or a non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The plaintiff company contends that when C. E. Overman, the assured of the defendant company, purchased and took possession of the 1950 Ford automobile on January 6, 1962, there was automatic coverage for 30 days under the terms and provisions of the defendant company's Insuring Agreement IV; that the accident having occurred on February 5, 1962, at approximately 7:30 o'clock p.m., same was within the 30 day period; that the said 1950 Ford was therefore covered under the said policy by the defendant company; that defendant company was primary carrier by reason of Donald E. Overman driving the said car as a non-owned vehicle; and that the plaintiff company would be the excess carrier over and above the limits of liability as provided by the defendant company in its policy to C. E. Overman.

The defendant company contends that the automatic insurance provision of its policy did not extend coverage to C. E. Overman for a period of 30 days from the time he acquired the 1950 Ford, by reason of the fact that C. E. Overman did not intend to ask for coverage on the said 1950 Ford; and that the accident of February 5, 1962 did not occur within the 30 day period.

C. E. Overman testified that following the acquisition of the 1950 Ford on Jan-

uary 6, 1962, up to the accident of February 5, 1962, and subsequent thereto, he did not notify his company nor request that they insure the newly acquired automobile. He testified that he did not intend to insure the 1950 Ford at any time before the accident. He did not request insurance from the defendant company after the accident because the automobile was inoperable and junked. The defendant company, subsequent to the accident and at all times including the time of the trial, has denied coverage to C. E. Overman upon the grounds that (1) C. E. Overman failed to notify the company within 30 days following his acquisition of the 1950 Ford and (2) he failed to request coverage after the accident.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW.

The Court makes the following Findings and Conclusions:

1. That on January 6, 1962, C. E. Overman purchased and took possession of a 1950 Ford automobile.

2. That the said 1950 Ford automobile was a newly acquired automobile of C. E. Overman, and on January 6, 1962, his 1958 Chevrolet automobile insured by the defendant company was his only other car.

3. That the accident occurred on February 5, 1962, while the 1950 Ford automobile owned by C. E. Overman was being driven by Donald E. Overman with the knowledge and consent of C. E. Overman, his father.

4. That the accident of February 5, 1962, was within the 30 day period of the automatic coverage for a newly acquired automobile under the terms and provisions of the defendant company's insurance contract with C. E. Overman.

5. That the said 1950 Ford automobile involved in the accident of February 5, 1962, was covered for liability insurance by the defendant company, which coverage extended to Donald E. Overman, who was driving the same with the knowledge and consent of C. E. Overman, the insured of the defendant company.

6. That the insurance policy of the defendant company was primary within the limits of liability of said policy, and the insurance policy of the plaintiff company insuring Donald E. Overman was excess within its limits of liability coverage.

C. E. Overman, the insured of the defendant company, having taken possession of the 1950 Ford on January 6, 1962, following which an accident occurred while said automobile was being driven by Donald E. Overman on February 5, 1962, the Court holds that said accident occurred within the 30 day period of time as provided under the terms of the Insuring Agreements IV of the policy contract issued by the defendant company to the said C. E. Overman. It follows that the defendant company afforded coverage to the said C. E. Overman within the limits of the policy for the February 5, 1962 accident.

The automatic insurance provision of the defendant company's policy automatically extended coverage for 30 days following the delivery date of a newly acquired automobile. It is the general law and the law of Iowa that, when time is to be computed from a particular day or an act is to be performed within a specified period, the rule is to exclude the first day and to include the last day of a specified period. Section 4.1 of the 1966 Code of Iowa provides in substance that in computing time the first day shall be excluded and the last day included. In conformity thereto, the Supreme Court of Iowa has likewise held that this same method has been uniformly used in computing periods of time in contracts and other instruments. The policy contract provided for 30 days' automatic coverage following the delivery date. The delivery date was a particular event. The first day, being the delivery day, is to be excluded, the last day of the 30 days is to be included, and consequently the accident of February 5, 1962, was within the 30 day period. See St. Paul Mercury Indemnity Co.

v. Nyce, 241 Iowa 550, 41 N.W.2d 682 (1950); Happle v. Monson, 235 Iowa 650, 17 N.W.2d 391 (1945); Teucher v. Hiatt, 23 Iowa 527 (1868); Iowa Code Section 4.1(11), (23) (1966). See generally 52 Am.Jur. Time, Section 17, at p. 342 (1938); 29 Am.Jur. Insurance, Section 319, at p. 691 (1938).

■ Under Insuring Agreement IV(4) of the defendant company's policy issued to C. E. Overman automatic insurance for a newly acquired automobile is provided if (1) it replaces an automobile owned by the insured and covered by his policy, *or* (2) the company insures all automobiles owned by the named insured on the date of the date of the delivery of the newly acquired automobile, and (3) the named insured notifies the company within 30 days following such delivery date. It is without dispute in the record that on January 6, 1962, the date upon which C. E. Overman took possession of the 1950 Ford, the defendant company insured C. E. Overman's 1958 Chevrolet automobile. At that time C. E. Overman owned no other automobile. The accident of February 5, 1962, occurred within the 30 day period. From January 6, 1962, up to and after the accident of February 5, 1962, C. E. Overman did not notify the defendant company of his acquisition of the 1950 Ford nor request insurance therefor. Where, however, an accident takes place *within* the notice period but before notice has been given, the requirement of notice is deemed a condition subsequent to insured status. Coverage is automatically effected upon delivery of the new automobile, and it remains in effect until the end of the specified period regardless of the giving of notice. This is the majority rule and the rule which best serves the important policy of certainty in insurance law. In Inland Mut. Ins. Co. v. Stallings, 162 F. Supp. 713 (D.Md.1958), the Court in its interpretation of an identical automatic insuring agreement stated:

"It is agreed that the 1950 Ford was not a replacement for the 1951 Ford, which still stood in Stallings' name

* * *. Literally, therefore, Inland insured all automobiles (the 1951 Ford) 'owned by the named insured at such delivery date.'

"Inland's second point is that the named insured did not notify the company within thirty days following the date of the delivery to him of the 1950 Ford. That is true. But it is also true that the accident happened within the thirty day period. It has been generally held that the requirement of notice is a condition subsequent rather than a condition precedent to the extended coverage, and 'that such coverage is automatically effected upon delivery of the new automobile and remains in effect until the end of the specified period, irrespective of whether notice has been given or not.' "

■ So long as the accident occurred within the 30 day period there is coverage regardless of notice by the insured to his company. See Offerdahl v. Glasser, 5 Wis.2d 498, 93 N.W.2d 362 (1959). See generally 5A Am.Jur. Automobile Insurance, Section 84, at p. 83 (1938). The contention of the defendant company that there was no coverage because C. E. Overman did not *intend* to insure his newly acquired 1950 Ford automobile is without merit. The coverage is automatic regardless of the intention of the insured. This is the meaning of "automatic." The requirement of notice is merely a condition subsequent which must be satisfied in order to maintain such coverage on the newly acquired car *beyond* the 30 day period. If no notice of request for coverage is given beyond the 30 day period, then, and only then, will the coverage cease. The consideration for the automatic insurance coverage during the 30 day period is the premium paid by the insured on his previously owned vehicle, whether one or more. See Horace Mann Mut. Cas. Co. v. Bell, 134 F.Supp. 307 (D. Ark.1955); Quaderer v. Integrity Mut. Ins. Co., 263 Minn. 383, 116 N.W.2d 605 (1962).

Donald E. Overman, the insured of the plaintiff company, was driving a

non-owned automobile, his father C. E. Overman's 1950 Ford which was insured with the defendant company, and was driving the same with the knowledge and consent of C. E. Overman at the time of the accident of February 5, 1962. The defendant company therefore was the primary insurance carrier, and the plaintiff company was the excess carrier. This Court and the Supreme Court of Iowa have held that the preferred rule is that the insurer of the named insured who owns the automobile is liable up to the limit of its policy, and the insurer of the named insured to whom the automobile was non-owned is liable only for the excess over the limits of the other policy. See American Universal Ins. Co. v. Dykhouse, 219 F.Supp. 62 (N.D.Iowa 1963); Allied Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co., 257 Iowa 100, 131 N.W.2d 798 (1964); Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co., 254 Iowa 68, 116 N.W.2d 434 (1962). In terms of the automobile accident of February 5, 1962, the defendant company was the primary carrier up to the limits of its policy of $10,000.00 and within the limits of its policy for property damage, and the plaintiff company was the excess carrier within the limits of its policy of $25,000.00.

The plaintiff company is entitled to recover from the defendant company the sum of $12,056.85, which represents $10,000.00 owed by the defendant company under its full policy limit, plus two-fifths of the interest of $1,102.74, being $441.10, and the full property damage judgment and interest totaling $1,615.75, together with interest on said $12,056.85 at five percent (5%) from April 1, 1965, which is the date said judgment and interest were paid by the plaintiff company. The plaintiff company should likewise recover from the defendant company one-half of the attorney fees of $2,876.10 as paid by the plaintiff company, being $1,438.05, and one-half of the Court costs of $257.55, being $128.77, totaling $1,566.82.

Accordingly, it will be ordered that judgment be entered in favor of the plaintiff, the Central National Insurance Company, and against the defendant, Le Mars Mutual Insurance Company of Iowa, in the amount of $12,056.85 with interest thereon at five percent (5%) from the 1st day of April, 1965, and the sum of $1,566.82, and the costs of this action.

It is ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law, and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.