Donald A. WESTHOFF, Individually and as Father and Next Friend of James J. Westhoff et al., Appellants,

v.

AMERICAN INTERINSURANCE EXCHANGE, Appellee,

and

Auto-Owners (Mutual) Insurance Company, Appellee and Cross-Appellant.

No. 57853.

Supreme Court of Iowa.

Feb. 16, 1977.

O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellants.

Fuerste, Carew & Coyle, Dubuque, for appellee, American Interinsurance Exchange.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellee and cross-appellant, Auto-Owners (Mutual) Ins. Co.

Heard before MOORE, C. J., and MASON, REYNOLDSON, HARRIS and McCORMICK, JJ.

MASON, Justice.

Plaintiffs, Donald A. Westhoff, individually and as father and next friend of James J. Westhoff, James J. Westhoff and Ronald J. Westhoff, brought this declaratory judgment action to determine the insurance coverage available to them under the uninsured motorist provisions of policies issued by defendants, American Interinsurance Exchange (hereinafter American) and Auto-Owners (Mutual) Insurance Company (hereinafter Auto-Owners).

Of the three policies of concern herein, one was issued by American and two were issued by Auto-Owners. American had in effect a motorcycle-motor scooter policy insuring Robert Carl Vogt. Auto-Owners had in effect an automobile policy issued to plaintiff Donald A. Westhoff insuring his 1969 Chevrolet Impala automobile and one issued to Ronald J. Westhoff insuring his 1967 Chevrolet Impala automobile. All three insurance policies contained endorsements providing for coverage for damages to an insured as defined in said policies for bodily injury caused by the owner or operator of an uninsured automobile as required by chapter 516A, The Code.

Plaintiffs' petition asserted they were entitled to recover up to the policy limits on each of the policies concerned for the actual damages sustained by them. Each defendant maintained the "other insurance" provisions of its policy or policies operated to deny coverage to plaintiffs.

The matter was submitted to the trial court upon the pleadings, exhibits, interrogatories and answers thereto and stipulated facts. The trial court held: (1) the "other insurance" clauses of the policies operated to deny recovery beyond the limits of the policy with the broadest coverage; (2) plaintiff James J. Westhoff was only entitled to recover on the American policy; and (3) plaintiff Ronald J. Westhoff was entitled to recover up to $10,000 with liability therefor shared pro rata by defendants. From this judgment plaintiffs appeal and defendant Auto-Owners cross-appeals.

The statement of stipulated facts filed by the parties herein in the district court provided in part as follows:

"Come now all of the parties hereto and for the purpose of this action make the following Stipulation of Facts as of August 21, 1972:

"Robert Carl Vogt * * * was the owner of a 1972 Honda Motorcycle * *, and was the 'named insured' under a motorcycle-motor scooter policy * * * issued to Vogt by * * * [American] * * *;

"Donald A. Westhoff was the owner of a 1969 Chevrolet Impala automobile and was the 'named assured' under an automobile policy * * * issued by * * * [Auto-Owners];

"That each of the aforesaid policies of insurance were in full force and effect;

"Vogt had granted the actual use of his aforesaid motorcycle to Ronald J. Westhoff and James J. Westhoff when the said Ronald J. Westhoff and James J. Westhoff were involved in a motor vehicle accident * * * with an automobile owned by Jo

Anne Elliott and operated with her consent by Barbara R. Norpel, causing personal injuries to each of said Westhoffs, and to the knowledge and belief of the parties hereto said automobile was uninsured and there existed no automobile liability insurance protecting Jo Anne Elliott and/or Barbara R. Norpel as a result of said collision;

"Ronald J. Westhoff and James J. Westhoff were the sons of Donald A. Westhoff and all were residents of the same household;

"* * *

"James J. Westhoff was an 'insured' under the American Policy relating to protection afforded for bodily injury caused by an uninsured automobile;

"James J. Westhoff was an 'assured' under the Donald A. Westhoff Auto-Owners Policy and was an 'insured' under the Ronald J. Westhoff Auto-Owners Policy; both relating to protection afforded for bodily injury caused by an uninsured automobile;

"Ronald J. Westhoff was an 'insured' under the American Policy relating to protection afforded for bodily injury caused by an uninsured automobile;

"Ronald J. Westhoff was an 'assured' under the Donald A. Westhoff Auto-Owners Policy and was an 'insured' under the Ronald J. Westhoff Auto-Owners Policy; both relating to protection afforded for bodily injury caused by an uninsured automobile;

"James J. Westhoff did not own an automobile;

"It is further stipulated and agreed that the Court may make its Decree in this action as if the liability of Jo Anne Elliott or Barbara R. Norpel to the plaintiffs and the total sums which the plaintiffs were legally entitled to recover as damages from the owner or operator of an uninsured automobile had been established."

Under the heading "CONDITIONS" the policy issued by American to Vogt provides in pertinent part:

"6. Other Insurance: * * *.

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this endorsement for a greater proportion of the applicable limit of liability of this endorsement than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The Auto-Owners policy issued to Donald A. Westhoff contains a paragraph virtually identical to the American provision set forth above and further provides:

"Subject to the foregoing paragraph, if the assured has other similar insurance available to him against a loss covered by Coverage D [uninsured motorist provisions], the Company shall not be liable under this coverage for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

The Auto-Owners policy issued to Ronald J. Westhoff contains the following provisions under "CONDITIONS":

"With respect to bodily injury under Coverage D [uninsured motorist provisions] if the insured has other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable under this coverage for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.

"Except as stated above, the insurance afforded by this policy is primary insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

"(a) *Contribution by Equal Shares.* If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

"(b) *Contribution by Limits.* If any such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss." (Emphasis in original).

In addition to the above provisions, the Auto-Owners policies contained the following, commonly referred to as an "escape" clause, with but slight variation in the policy issued to Donald A. Westhoff:

"This coverage [uninsured motorist] shall not apply: (a) to bodily injury of an insured sustained while in, upon, entering or alighting from any automobile not owned by the insured if the owner has insurance similar to that afforded by this coverage and such insurance is available to the insured; * * * ."

All three policies contained policy limits of $10,000 per person and $20,000 per accident.

The trial court held James J. Westhoff, not a "named insured" under any policy, was entitled to recover on the American

policy to the extent of the policy limits. As to Ronald J. Westhoff the court, relying upon *Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co.*, 175 N.W.2d 413 (Iowa 1970), concluded the pro rata clause contained in the American policy and the "escape" clause in the Auto-Owners policy were mutually repugnant and therefore required a pro rata sharing of liability by defendants. In addition, the court rejected plaintiffs' contention they were entitled to recover up to the policy limits of each policy for their actual damages and were not limited by the policy limits of a single policy. To so hold, said the court, would totally ignore the "other insurance" clauses contained in the policies and would contravene language of this court in *Burcham v. Farmers Insurance Exchange*, 255 Iowa 69, 121 N.W.2d 500.

Plaintiffs maintain the following issues are presented for review:

1. Are "other insurance" provisions of motor vehicle insurance policies which prohibit recovery of actual damages up to the limits of each policy void as against public policy and contrary to chapter 516A, The Code?

2. Are "excess" or "excess-escape" clauses contained in motor vehicle insurance policies providing the statutorily required minimum uninsured motorist coverage of no effect where damages to an insured under such policies are in excess of the coverage afforded by each applicable policy?

3. Should chapter 516A, The Code, be liberally construed to fully accomplish the legislative purpose in enacting it, and if so, are "other insurance" provisions void as contrary thereto?

4. Interpreting these insurance contracts from the viewpoint of an ordinary person, not a specialist or expert, are plaintiffs entitled to recover up to the policy limits of each policy for the actual damages sustained as long as there is no double recovery?

5. Should the insurance contracts herein be construed most favorably to plaintiffs on the ground they are ambiguous, require in-

terpretation or are susceptible to two equally proper constructions?

6. Did the trial court erroneously subject defendant Auto-Owners to partial liability for the actual damages sustained by Ronald J. Westhoff? (Raised on cross-appeal).

 The essence of this litigation is the appropriate construction of the insurance policies involved. Construction, as distinguished from interpretation, is the legal effect of a contract and is always a matter of law to be decided by the court. *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975); *Porter v. Iowa Power and Light Company*, 217 N.W.2d 221, 228 (Iowa 1974). With respect to questions of law, this court is not bound by trial court determinations. *Flexsteel Ind., Inc. v. Morbern Ind. Ltd.*, 239 N.W.2d 593, 596 (Iowa 1976); *In re Estate of Northup*, 230 N.W.2d 918, 921 (Iowa 1975).

I. In this division plaintiffs' first and third contentions will be considered together. In essence, it is argued the "other insurance" provisions of defendants' policies are void as against public policy and contrary to the legislative intent in enacting chapter 516A, The Code.

Section 516A.1, The Code, provides in part:

"No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death * * * shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided * * *, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle * * *. Such coverage shall include limits for bodily injury or death at least equal to those stated in subsection 10 of section 321A.1 [$10,000 per person and $20,000 per accident]. * * *"

Of the utmost importance to a resolution of plaintiffs' contention is section 516A.2 which provides:

"Nothing contained in this chapter shall be construed as requiring forms of coverage provided pursuant hereto, whether alone or in combination with similar coverage afforded under other automobile liability or motor vehicle liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits for bodily injury or death prescribed in subsection 10 of section 321A.1 [$10,000 per person and $20,000 per accident]. Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits."

January 21, 1976, almost nine months after plaintiffs' briefs were filed in the matter now before us, this court filed its opinion in *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321 (Iowa 1976). In that case the administrator of an estate had brought an action against a negligent uninsured motorist for damages sustained by reason of the death of her husband proximately caused by a collision of a motor vehicle in which he was riding and that of the uninsured motorist. The district court adjudged damages to the estate to be $30,000. The administrator then brought action against two insurance companies seeking the per person policy limits from each based upon uninsured motorist coverage afforded the decedent. The trial court held for the insurers and dismissed the petition whereupon the administrator brought an appeal to this court.

The *McClure* opinion dealt with the questions presented herein. In reaching the conclusion "other insurance" clauses are valid under Iowa law, this court said:

"* * * A majority of the courts hold under statutes corresponding to § 516A.1 that such policy clauses are invalid and that the insured may stack the uninsured motorist coverages up to the actual amount of damages sustained from the injuries. * * [citing authorities]. The reason frequently given in the opinions for the holding is that

since a statute such as § 516A.1 requires *every* policy to contain uninsured motorist coverage, the legislature must have intended that such coverage cannot be cut down or eliminated in *any* policy by a clause requiring reduction on account of *other* policies. Illustrative cases taking a contrary view, so long as the injured person receives at least the statutory minimum amount, are \* \* \* [citing authorities]. We think that under a statute like our § 516A.1, *standing alone,* the majority rule more likely reflects legislative intent.

"Neither of the foregoing lines of cases involves statutes like our second provision, § 516A.2. We find most persuasive, therefore, a third line of decisions involving statutes which authorize clauses preventing overlapping benefits. \* \* \* [citing authorities]. These decisions give effect to those statutes and uphold anti-stacking clauses in policies. We think our § 516A.2 must be given similar effect." 238 N.W.2d at 326. (Emphasis in original).

This court then proceeded at 238 N.W.2d at 326–327 to analyze and apply section 516A.2 as follows:

"Had the uninsured *motorist* here actually been insured in the minimum amount required by § 321A.1(10)—$10,000–$20,000 —the administrator would have been able to collect $10,000 from that *motorist's* insurer by following the course provided in our direct-action statute, chapter 516, Code 1975. The first sentence of § 516A.2 states that chapter 516A shall not be construed as requiring forms of coverage, whether alone or *in combination with similar coverage under other motor vehicle liability policies,* to afford limits exceeding those which would have existed had the injured person been hurt by a person who possessed insurance in the minimum limits required by § 321A.1(10). The legislature must have had some purpose in adding this provision, and the purpose appears to be to allow the uninsured motorist policy, *in combination with similar policies,* to provide the minimum limits of § 321A.1(10), or $10,000–$20,000.

"The second sentence of § 516A.2 buttresses this conclusion. That sentence expressly permits forms of coverage to include 'terms, exclusions, limitations, conditions, and offsets' which are designed to avoid 'duplication of insurance and other benefits.'

"\* \* \*

"The *other* insurance clauses before us do not purport to reduce the uninsured motorist insurance below the statutory minimum of $10,000 for each person and $20,000 for each accident. We hold that they are valid under § 516A.2." (Emphasis in original).

■ A review of the authorities, including the cases cited by plaintiffs, does not produce a single case which would support a rejection of the *McClure* analysis. The distinction between the majority position and the *McClure* holding is the existence of section 516A.2. None of the cases cited by plaintiffs dealt with an equivalent statutory provision. See *Simpson v. State Farm Mutual Automobile Insurance Co.,* 318 F.Supp. 1152, 1154, 1156–1157 (S.D.Ind.1970). Consequently, plaintiffs' contention "other insurance" provisions of motor vehicle liability insurance policies are contrary to Iowa law is clearly without merit.

■ II. In light of the conclusion reached in division I plaintiffs' second contention is easily resolved. "Excess" and "excess escape" clauses are types of "other insurance" provisions. See *Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d at 415; Annot., 76 A.L.R.2d 502, 503, section 1. In division I hereof, it has been determined "other insurance" clauses are valid under Iowa statutory and case law. That determination is dispositive of the issues raised by plaintiffs' second contention.

■ III. Plaintiffs' fourth and fifth contentions are erroneously grounded upon rules of contractual interpretation applicable to an insurance contract which is ambiguous, highly technical in nature, or susceptible to two equally proper interpretations. In that situation, this court has said the contract is subject to the interpretation an

ordinary layman would give it. *Steinbach v. Continental Western Ins. Co.,* 237 N.W.2d 780, 782 (Iowa 1976); *Connie's Const. Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d at 210; *Benzer v. Iowa Mutual Tornado Insurance Ass'n,* 216 N.W.2d 385, 389 (Iowa 1974). In addition, this court employs the well established rule that an ambiguity is to be construed adversely to the drafter and favorably to the insured. *Steinbach v. Continental Western Ins. Co.,* 237 N.W.2d at 782; *Dublinske v. Pacific Fid. Life Ins. Co.,* 230 N.W.2d 924, 926 (Iowa 1975); *Rich v. Dyna Technology, Inc.,* 204 N.W.2d 867, 872 (Iowa 1973).

However, plaintiffs do not contend any of the policies herein are ambiguous or highly technical, standing alone. Rather, plaintiffs maintain the interrelation of defendants' policies under the facts present herein results in confusion and uncertain coverage. Stated otherwise, plaintiffs' complaint is not directed to any provision of the three policies when considered individually but to an asserted ambiguity arising in each of the policies when the terms of all policies are considered together. In this situation, specialized principles apply and those principles do not affect the validity of the conflicting contractual provisions but merely provide the means to harmonize them.

In other words, the question now becomes whether, under the appropriate principles, defendants' "other insurance" provisions apply, and if so, what policy or policies are subject to liability. Consequently, at this point, the resolution of Auto-Owner's cross-appeal becomes a by-product of the determination of the applicability of the various "other insurance" provisions involved herein.

Under somewhat similar circumstances, this court in *Union Ins. Co. (Mutual) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d at 417–418, stated:

"Demonstrably the many methods employed in an attempt to resolve the problem of double coverage through conflicting clauses have produced nothing less than utter confusion. Each of the foregoing approaches has been described by someone as a mechanical application of some arbitrary test. As previously disclosed, the prior-in-time, and search for a primary tort-feasor, have been largely rejected. The fixing of liability by determining which of two clauses is the more specific is no better. Moreover, it encourages the continuing draftsmanship battle by which insurers seek still more specific policy terms, and the end is not in sight. 65 Colum.L.Rev. 319, 322.

"In effect Union Insurance says, because of Iowa Hardware's policy it owes only excess insurance, or at most only a pro rata share. By reason of the Union Insurance policy, Iowa Hardware takes the position it owes nothing. To solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a pseudo-solution in that it only aggravates a circular riddle.

"* * *

"It is our belief, this case can be more equitably resolved by a return to settled principles which give dominant consideration to rights of the insured who should have coverage no less than if she had been protected by only one of the policies. This approach is predicated on the principle that policies should be construed liberally in favor of the rights of an insured, strictly against the insurer. * * * [citing authorities]. The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would lead to a conclusion that the latter, though protected by two policies, actually has none. This would be an unconscionable result. * * *

"* * * We, therefore, shall follow this rule: When the insured has coverage from either of two policies, but for the other, and each contains a provision reasonably subject to a construction that it conflicts with a provision in other concurrent insurance, there is a conflict. * * *

"VI. As already indicated, we are satisfied, a repugnancy between relative provisions of two policies is more equitably resolved by ignoring the two offending claus-

es. Resultantly Iowa Hardware's policy, minus its escape clause, covers the insured, while the Union Insurance policy, minus its excess clause, provides like coverage. The insured is thus protected by both insurers which is a reasonable result since each wrote expanded coverage policies which must have been intended to reach her, and this problem of double insurance was 'involuntarily thrust upon the insured through the operation of another's insurance contract.' See 38 Minn.L.Rev. 838, 851."

This court concluded the liability coverage therein "must be prorated" between the insurers relying upon the following language from *United Services Auto. Ass'n v. Hartford Acc. & Ind. Co.,* 220 Tenn. 120, 414 S.W.2d 836, 841:

"It is the opinion of this Court that the provisions of the policies involved in the case presently before this Court are, * *, mutually repugnant. If one starts with United's policy and attempts to determine if the Hartford policy constitutes other valid and collectible insurance, one can only use the terms contained in Hartford's policy to determine if it is other valid and collectible insurance and, under the terms of Hartford's policy, it is not. If one starts with Hartford's policy and attempts to determine if United's policy is other valid and collectible insurance, one must consider the terms of United's policy, and can only reach the conclusion that under the terms of United's policy, it is not other valid and collectible insurance. Therefore, both policies would appear to provide coverage.

"It seems to us that the only reasonable result to be reached is a proration between the two insurance companies in proportion to the amount of insurance provided by their respective policies. * * *."

The proration approach, which apparently originated with *Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co.,* 195 F.2d 958 (9 Cir. 1952), has been applied by a growing number of courts to situations where "escape" clauses have conflicted with various other "other insurance" clauses. See *Werley v. United Services Automobile Association,* 498 P.2d 112 (Alaska 1972);

*Southern Home Insurance Company v. Willoughby,* 124 Ga.App. 162, 182 S.E.2d 910; *Indiana Insurance Co. v. American Underwriters, Inc.,* 261 Ind. 401, 304 N.E.2d 783; *Graves v. Traders & General Insurance Company,* 252 La. 709, 214 So.2d 116, 118; *Wyoming Farm Bur. M. I. Co. v. American Hdwe. M. I. Co.,* 487 P.2d 320 (Wyo.1971); *State Farm Mut. Auto. Ins. Co. v. United States F. & G. Co.,* 490 F.2d 407 (4 Cir. 1974); *Fireman's Fund Insurance Co. v. Reliance Insurance Co.,* 291 F.Supp. 618, 621 (D.Or.1968); *State Farm Mutual Auto. Ins. Co. v. Travelers Ind. Co.,* 301 F.Supp. 1131, 1134 (D.Colo.1969), aff'd, 433 F.2d 311 (10 Cir. 1970); *Allstate Insurance Co. v. American Underwriters, Inc.,* 312 F.Supp. 1386 (N.D.Ind.1970).

It must be admitted there are courts which have not applied the proration approach where, as here, an "escape" clause conflicts with a "pro rata" provision. However, as pointed out in *Union Ins. Co. (Mutual),* supra, the methods employed by those courts have produced nothing less than utter confusion.

In the instant case, there is no dispute as to where the sole liability based upon coverage afforded to James J. Westhoff rests. In this connection as pointed out in American's brief and argument its "other insurance" clause on the insured motorcycle being operated at the time of the mishap involved other carriers' coverage *only* if the accident victim on the motorcycle was a *named* insured in another policy. He is not a "named insured" under any policy of concern herein. Therefore, no conflict is present.

On the other hand, the "other insurance" provisions of defendants' policies are in obvious conflict when the coverage afforded Ronald J. Westhoff is analyzed. The "escape" clause of the Auto-Owners policies are pitted against the American "pro rata" provision. Application of the pro rata approach of *Union Ins. Co. (Mutual),* supra, leads to the conclusion Auto-Owners, by virtue of the applicability of two policies issued by it, is potentially liable for two-thirds of the $10,000 recoverable by Ronald

J. Westhoff and American is potentially liable for the remaining one-third.

In summary then, James and Ronald are each potentially entitled to recover up to $10,000 on the uninsured motorist insurance applicable herein. Defendant American is potentially liable to plaintiff James J. Westhoff for that amount. As to plaintiff Ronald J. Westhoff, American is potentially liable in the amount of $3,333.33 and Auto-Owners is potentially liable for his actual damages in the amount of $6,666.67 by reason of its issuance of two of the policies involved.

Auto-Owners cites and relies to some extent on *Benzer v. Iowa Mutual Tornado Insurance Ass'n,* 216 N.W.2d 385 in regard to its cross-appeal. In the cited case the court had before it a single policy which was being attacked as ambiguous in regard to the provision dealing with "other insurance" clauses contained in the policy. The effect of section 516A.2, The Code, was not reached. It is our view that decision does not help Auto-Owners in this matter.

The case is therefore—Affirmed on both appeals.