GRINNELL MUTUAL REINSURANCE COMPANY, Appellant,

v.

GLOBE AMERICAN CASUALTY COMPANY, Appellee.

No. 87–905.

Supreme Court of Iowa.

July 20, 1988.

As Corrected Aug. 17, 1988.

Theodore T. Duffield and Michael D. Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

L.J. Cohrt of Swisher & Cohrt, Waterloo, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

Christine Kasal was driving a car owned by Tony Jacobi when it was struck by an uninsured driver. Kasal was injured and looked to the uninsured motorist provisions of her father's Grinnell Mutual policy and to Jacobi's insurer, Globe American. Globe paid $1000 to Kasal on its medical payment provisions but denied liability under its uninsured motorist coverage. Grinnell Mutual paid $30,000 to Kasal and then sued for contribution from Globe.

The district court ordered the claim prorated between Grinnell Mutual and Globe and gave Globe $1000 credit against its share for its medical payments made to Kasal. Grinnell Mutual appealed; and Globe cross-appealed from the court's find-ing that Kasal was an "insured" under Globe's policy. On the appeal, we reverse and remand for entry of judgment for Grinnell Mutual. Globe did not brief or argue its cross-appeal issue. We therefore deem it waived and affirm as to that portion of the judgment. See Iowa R.App.P. 14(a)(3).

I. *Proration of the Claim.*

The underlying facts were stipulated. Christine Kasal, the driver, was an "additional insured" under a Grinnell Mutual policy issued on another car to her father, Kenneth R. Kasal. This policy had coverage for uninsured motorists, and contained this additional provision:

> If there is other similar insurance on a loss covered by the [policy's uninsured motorist provision] we will pay our proportionate share as our limit of liability bears to the total limits of all applicable similar insurance. *But, any insurance for a vehicle you do not own is excess over any other applicable similar insurance.*

(Emphasis added.) This policy had uninsured motorist limits of $50,000 per person and $100,000 per occurrence.

The car being driven by Christine and owned by Tony Jacobi also had uninsured motorist coverage. The limits were $20,000 per person and $40,000 per occurrence, with this provision relating to limits of its liability:

> When you have other uninsured motorist protection in addition to the coverage under this policy, we will pay only our share of any damages. Our share is determined by adding up the limits of this insurance and any other insurance that applies and finding the percentage of the total which our money limits represent. That percentage is applied to the amount of damages which does not exceed the highest money limits of any one such policy.

Limitations such as these are generally called "other insurance" clauses, and cases involving them have reached this court with some frequency. See, e.g., *Westhoff v. American Interinsurance Exch.*, 250 N.W.2d 404 (Iowa 1977); *McClure v. Employers Mut. Casualty Co.*, 238 N.W.2d

321 (Iowa 1976); *Union Ins. Co. v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d 413 (Iowa 1970); *Burcham v. Farmers Ins. Exch.,* 255 Iowa 69, 121 N.W.2d 500 (1963); *Motor Vehicle Casualty Co. v. LeMars Mut. Ins. Co.,* 254 Iowa 68, 116 N.W.2d 434 (1962). We have, in fact, noted that

> [t]he myriad problems attendant upon "other insurance" clauses is not new, and the conflicting solutions adopted demonstrate a frustrating judicial attempt to resolve what appears to be an endless interindustry semantic battle.

*Union Ins. Co.,* 175 N.W.2d at 414.

The interaction of such provisions has also been the subject of considerable other writing. *See, e.g.,* Annotation, *Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions,* 28 A.L.R.3d 551 (1969); Annotation, *Apportionment of liability between automobile liability insurers where one of the policies has an "excess insurance" clause and the other a "proportionate" or "prorata" clause,* 76 A.L.R.2d 502 (1961); Annotation, *Apportionment of liability between liability insurers each of whose policies provides that it shall be "excess" insurance,* 69 A.L.R.2d 1122 (1960); Annotation, *Apportionment of losses among automobile liability insurers under policies containing pro rata clauses,* 21 A.L.R.2d 611 (1952). It has been noted that

> [other insurance] clauses are of three principal kinds: (1) those providing that in the event of other insurance, the insurer issuing the policy in question is not liable at all, usually called "escape" clauses; (2) those providing that in the event of other insurance, the coverage offered by the policy in question shall be "excess" coverage, that is, the insurer is liable only if the loss is in excess of the limits of the other policy or policies, usually called "excess" clauses; and (3) those providing that in the event of other insurance, the insurer issuing the policy in question shall be liable only for the proportion of the loss that represents the ratio between the limit of liability stated therein and the total limit of liability of all valid and collectible insurance cover-

ing the loss, usually called "prorata" clauses.

Annotation, 76 A.L.R.2d at 503.

In the present case, Grinnell Mutual's provision that "any insurance for a vehicle you do not own is excess over any other applicable similar insurance" falls in the category of "excess" clauses. *Id.; see generally McClure,* 238 N.W.2d at 327; *Burcham,* 255 Iowa at 72, 121 N.W.2d at 501; *Motor Vehicle Casualty Co.,* 254 Iowa at 71, 116 N.W.2d at 436. Globe's "other insurance" provision, on the other hand, is a prorata type. *McClure,* 238 N.W.2d at 327; Annotation, 76 A.L.R.2d at 503.

In this situation, the general rule is stated:

> [W]here one of the policies contains an "excess insurance" clause and the other a "pro rata" clause—effect generally is given to the "excess insurance" clause. Thus, where an "excess insurance" clause pertains to nonownership coverage, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the policy issued to the owner of the vehicle is the "primary" policy, and the company issuing it is liable up to the limits of the policy without apportionment.

7A Am.Jur.2d *Automobiles and Highway Traffic* § 434, at 83–84 (1980). Iowa cases have followed this general rule. *See, e.g., McClure,* 238 N.W.2d at 328; *Burcham,* 255 Iowa at 73, 121 N.W.2d at 502; *Motor Vehicle Casualty Co.,* 254 Iowa at 73, 116 N.W.2d at 437 (rule characterized as "overwhelming majority view").

The district court in the present case did not apply this general rule, however, concluding that the "other insurance" provisions created such an ambiguity that proration of the claim was required. The Kasal claim was ordered to be paid on the basis of the insurers' relative amounts of uninsured motorist coverage—⁵⁄₇ths by Grinnell Mutual and ²⁄₇ths by Globe.

In reaching its prorata decision, the district court relied primarily on *Westhoff v. American Interinsurance Exchange,* 250 N.W.2d 404 (Iowa 1977). *Westhoff* held

that, when one policy had an "escape" provision under which the insurer would not be liable at all and the other had a prorata provision, a repugnancy existed which required proration. *Id.* at 410–11. A similar result was reached in *Union Ins. Co.*, 175 N.W.2d at 417–18.

The *Westhoff* and *Union Ins. Co.* cases must be distinguished because they involved "escape" clauses in competition with different types of "other insurance" provisions. When one policy has an escape provision and the other has an "other insurance" provision of a different type, proration has generally been ordered. It has been said that a claimant under two policies, one of which has an escape provision, could conceivably receive less than if only one policy were involved. We have said that, when insurers duke it out in such cases, "the insured is actually left helpless on the sidelines," so both insurers will be held on a prorata basis. *Union Ins. Co.*, 175 N.W.2d at 417–18.

Another rationale for the rule of proration in "escape" clause cases is that, when such a clause competes with another type, neither is "similar" insurance, so both companies are liable. When both are liable, the claim will be prorated. *Westhoff*, 250 N.W.2d at 411; *United Servs. Auto. Ass'n v. Hartford Accident & Indemnity Co.*, 220 Tenn. 120, 131, 414 S.W.2d 836, 841 (1967).

■ Whatever the rationale is behind the rule requiring proration in "escape" clause cases, we do not have such a case here. We have an excess clause competing with a prorata clause. In that case, the excess carrier pays only to the extent that the prorata insurance policy fails to satisfy the claim. *McClure*, 238 N.W.2d at 328; *Burcham*, 255 Iowa at 73, 121 N.W.2d at 502; *Motor Vehicle Casualty Co.*, 254 Iowa at 73, 116 N.W.2d at 437.

We conclude that the district court erred in requiring proration of the uninsured motorist claim of Christine Kasal. Globe should pay its policy limit of $20,000 and the excess of $10,000 should be paid by Grinnell Mutual.

## II. *Credit for the Medical Payment.*

■ Globe paid Christine Kasal $1000 under its medical payment provision covering the car being driven by her. The district court gave Globe credit for that amount against its uninsured motorist liability. Grinnell Mutual argues on appeal that this was error.

Iowa Code section 516A.2 (1985), regarding policy requirements for uninsured and underinsured motorist coverage, allows the policies to provide "offsets which are designed to avoid duplication of insurance or other benefits." This section was addressed in *Lemrick v. Grinnell Mutual Reinsurance Co.*, 263 N.W.2d 714, 718 (Iowa 1978):

> Under § 516A.2 and *McClure*, a policy paragraph can be drafted and enforced. . . . But the language of the paragraph must show that such is the intent, and an ambiguity in the paragraph is of course resolved against the insurer. Moreover, the existence of a statute such as § 516A.2 does not automatically allow deduction of such insurance as medical payments. An appropriate implementing paragraph in the policy is essential.

*Id.* (citations omitted).

The question in this case is whether the language of Globe's policy shows an intent to offset medical payments against uninsured motorist claims. Globe argues it does, pointing to this provision of its policy:

> B. However, if other medical expense coverage . . . [is] available to pay the same medical expense, the coverage under this policy is excess coverage over and above all such other insurance and this policy will not apply to that amount of medical expense which is paid or payable by such other coverage.

We agree with Grinnell Mutual that this provision does not permit the offsetting of medical payments against Globe's uninsured motorist liability. It is an "other insurance" provision with respect to other insurance covering medical expense; it does not even purport to deal with uninsured motorist coverage. We conclude it

was error for the court to order the $1000 credit to be given to Globe.

We reverse and remand for entry of a judgment providing for payment of the claim by Globe to the extent of the limits of its liability and any excess payment to be made by Grinnell Mutual. This judgment shall not give credit to Globe for any medical payment made under its policy.

REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS–APPEAL.