SECURITY INSURANCE COMPANY OF HARTFORD v DANIELS

1. APPEAL AND ERROR—AGGRIEVED PARTIES—CIRCUIT COURTS—AP-
   PEAL AS OF RIGHT—COURT RULES.

   A party can appeal as a matter of right from a final judgment of
   a circuit court only if he is aggrieved; an aggrieved party is one
   who has an interest in the subject matter of the litigation (GCR
   1963, 806.1).

2. APPEAL AND ERROR—STANDING—AUTOMOBILES—NEGLIGENCE—IN-
   SURANCE—PARTIES.

   In an insurance company's action for a declaratory judgment to
   determine the coverage for two persons who were in the
   process of defending an automobile negligence suit, the plaintiff
   in the negligence suit, who was made a party to the declaratory
   judgment action, has standing to appeal a judgment holding
   that no insurance coverage existed.

3. AUTOMOBILES—ABANDONED VEHICLES—OWNERSHIP—GARAGEKEEP-
   ERS—STATUTES.

   A garagekeeper, who received an abandoned vehicle at the direc-
   tion of a sheriff's department, was the "owner" of the vehicle,
   pursuant to the Michigan Vehicle Code, where the garage-
   keeper had exclusive use of the vehicle for a period greater
   than 30 days (MCLA 257.37; MSA 9.1837).

4. AUTOMOBILES—DEALERS—OWNERSHIP—TRANSFER OF TITLE—MICH-
   IGAN VEHICLE CODE.

   An automobile dealer, pursuant to the Michigan Vehicle Code,

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error §§ 182–184.
[2] 7 Am Jur 2d, Automobile Insurance §§ 160, 161.
[3, 5] 38 Am Jur 2d, Garages, and Filling and Parking Stations § 146
  et seq.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic § 29 et seq.
[6] 8 Am Jur 2d, Automobiles and Highway Traffic § 570.
[7] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 23–28.
[8] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 24, 83.
[9] 7 Am Jur 2d, Automobile Insurance §§ 105–107. .
[10] 4 Am Jur 2d, Appeal and Error § 4 et seq.
[11, 12] 44 Am Jur 2d, Insurance § 1538.

retains ownership of a car he sells until he complies with the statutory provisions for transferring title to the purchaser.

5. AUTOMOBILES—ABANDONED VEHICLES—JUNK VEHICLES—OWNER-SHIP—POSSESSION—GARAGEKEEPERS.

A garagekeeper remained the owner of an abandoned vehicle, even after he had sold the vehicle, where the garagekeeper failed to comply with the statutory provisions for disposition of abandoned and abandoned-junk vehicles (MCLA 257.252; MSA 9.1952).

6. AUTOMOBILES—NEGLIGENCE—OWNER'S LIABILITY—CONSENT—STAT-UTES.

An owner is liable for the negligent operation of his motor vehicle only if that vehicle was driven with his express or implied consent or knowledge (MCLA 257.401; MSA 9.2101).

7. AUTOMOBILES—OWNERSHIP—MICHIGAN VEHICLE CODE.

Ownership of an automobile pursuant to the Michigan Vehicle Code does not have to be exclusive.

8. AUTOMOBILES—INSURANCE—WORDS AND PHRASES—OWNED—MICH-IGAN VEHICLE CODE.

The term "owned" means the same in an automobile insurance policy as it does in the Michigan Vehicle Code, at least where no explanation is given for interpreting the term in the policy differently.

9. AUTOMOBILES—INSURANCE—PUBLIC POLICY—COVERAGE—ADDI-TIONAL VEHICLES.

A clause in an automobile liability insurance policy that provides coverage for an additional automobile of the insured if he notifies the insurer within 30 days of the acquisition of the vehicle is not void as against public policy.

10. APPEAL AND ERROR—COURT OF APPEALS—UNDECIDED QUESTIONS.

The Court of Appeals does not pass on questions not decided by the lower court.

11. INSURANCE—DISCLAIMER OF LIABILITY—RESERVATION OF RIGHTS—DECLARATORY JUDGMENT.

An insurance company's action for declaratory judgment before completion of a negligence suit against its insured is a suitable alternative to a "reservation of rights" letter in which an insurer states it will defend the insured but will also reserve the right to rely on policy provisions as a defense to the insurer's liability.

12. Insurance—Disclaimer of Liability—Estoppel—Reservation
    of Rights—Declaratory Judgment.

    An insurance company, which allegedly failed to give its insured
    a "reservation of rights" letter when it undertook his defense
    in a negligence case, is not estopped from denying liability
    where the insurer brought a declaratory judgment action to
    determine its liability while the negligence suit was pending.

Appeal from Monroe, James J. Kelley, Jr., J.
Submitted December 4, 1975, at Detroit. (Docket
No. 22616.) Decided July 19, 1976.

Complaint by Security Insurance Company of
Hartford against Gary L. Daniels, Robert E. Ver-
mett, Joseph and Benedict Sottile, Auto-Owners
Insurance Company, Detroit Automobile Inter-In-
surance Exchange and others for a declaratory
judgment as to the insurance coverage of Vermett
and the Sottiles, who were defending an automo-
bile negligence suit brought by Daniels. The court
held that no insurance coverage existed. Daniels
appeals. Reversed in part and remanded for fur-
ther proceedings.

*Kramer & Berris,* for plaintiff.

*Craig, Fried & Heidt (Hayim I. Gross,* of coun-
sel), for defendant Daniels.

*Robert N. Sawyer,* for defendant Vermett.

*Harry A. Lockwood,* for defendants Sottiles and
Auto-Owners Insurance Company.

*William J. Braunlich, Jr.,* for defendant Detroit
Automobile Inter-Insurance Exchange.

Before: J. H. Gillis, P. J., and Allen and M. J.
Kelly, JJ.

J. H. Gillis, P. J. On November 5, 1970, the Monroe County Sheriff's Department received a complaint regarding an abandoned 1968 Oldsmobile. The report prepared by that department indicated that three tires and the left front fender were missing from the vehicle, that the car battery was on the front seat, and the wires under the dash were ripped out. The car was registered in the State of Illinois, and title was held by Herman and Lois Jones.

The vehicle was taken, at the direction of the sheriff's department, to an automobile salvage yard owned by Joseph and Benedict Sottile. The Sottile brothers had a motor vehicle dealer's license. They bought used cars which they then sold —either as running vehicles or for parts.

On July 2, 1971, the Sottiles transferred possession of the 1968 Oldsmobile to defendant Vermett in return for $275. Because the Sottiles never had acquired title to the car, they made no attempt to transfer title to Vermett. The car was delivered to Vermett's radiator shop. Although Vermett was primarily engaged in the business of repairing radiators, he also, when business was slow, bought wrecked cars to repair and sell.

Vermett repaired the 1968 Oldsmobile, and on September 15, 1971, drove it in order to both road test it and visit a friend. While driving the vehicle, he collided with a vehicle driven by defendant Gary Daniels. Daniels, who allegedly suffered severe injuries, sued Vermett and Joseph Sottile for damages.

While that action was pending, Security Insurance Company of Hartford (hereinafter referred to as Security), which had issued a garagekeeper's liability policy to Vermett, brought a declaratory judgment action to determine who owned the auto-

mobile driven by Vermett and which, if any, insurance companies were required to defend the parties named as defendants in the action brought by Daniels. The following parties were included as defendants in the declaratory judgment action: Gary Daniels, Robert Vermett, Joseph and Benedict Sottile, d/b/a Sottiles' Auto Parts, Auto-Owners Insurance Company (hereinafter referred to as Auto-Owners), which had issued a garagekeeper's liability policy to the Sottiles, and Detroit Automobile Inter-Insurance Exchange (hereinafter referred to as DAIIE), which had issued a standard automobile insurance policy to Vermett.

After a bench trial held in Monroe County Circuit Court, the trial court issued an opinion holding that defendant Vermett was the owner of the 1968 Oldsmobile at the time of the accident and that none of the named insurance companies owed any duty to defend or pay any judgment on behalf of defendant Vermett in the action brought by defendant Daniels. In addition, the court held that at the time of the accident, the Sottile brothers did not own the 1968 Oldsmobile.

Defendant Gary Daniels now appeals as of right from the declaratory judgment, raising six issues. We will deal with them *seriatim.* First, however, we will discuss plaintiff Security's claim that defendant Daniels lacks standing to appeal the trial court's ruling regarding coverage of the insurance policy issued by Security to Vermett.

Under GCR 1963, 806.1, a party can appeal as a matter of right from a final judgment of a circuit court only if he is "aggrieved". Security argues that Daniels is not an "aggrieved party" under GCR 1963, 806.1, because he has only a contingent claim against Security. According to Security, the claim is contingent because under MCLA 500.3030;

MSA 24.13030, which bars an injured party from joining an insurer as a party defendant in an original action for damages, Daniels could sue Security only if he first recovered against Vermett in the original action.

The Michigan Supreme Court has explained that an "aggrieved party" is one who has an interest in the subject matter of the litigation. *In re Critchell Estate,* 361 Mich 432; 105 NW2d 417 (1960). Thus, the definition of "aggrieved party" varies according to the type of case at issue, and, consequently, the court must in each case examine the subject matter of the litigation.

The subject matter of the instant declaratory judgment action involves resolution of the legal issues of vehicle ownership and insurance policy coverage. Security admits that Daniels has an interest in the ownership issue. We believe that Daniels also has an interest in the coverage issue. Although Daniels was barred from joining the insurance companies in the original action, if he were to succeed in that action, he would be entitled to litigate the coverage issue in a subsequent action against the insurance companies. See *Meirthew v Last,* 376 Mich 33; 135 NW2d 353 (1965). Thus, he has an interest in resolution of that issue.

Security could have accepted the protection of MCLA 500.3030; MSA 24.13030, and postponed litigation of the coverage issue. Instead, Security chose to raise that issue in this case. Because Daniels has an interest in resolution of that issue and it is being litigated in the case at bar, he has an interest in the subject matter of the instant litigation. Consequently, Daniels is an aggrieved party under GCR 1963, 806.1, and he has standing to appeal.

I

*Were Joseph and Benedict Sottile, d/b/a Sottiles' Auto Parts, owners of the 1968 Oldsmobile at the time of the accident?*

MCLA 257.37; MSA 9.1837, defines the "owner" of a motor vehicle as:

"(a) Any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days.

"(b) A person who holds the legal title of a vehicle or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner."

The trial judge concluded that the Sottile brothers owned the 1968 Oldsmobile under MCLA 257.37(a); MSA 9.1837(a), during the time they had exclusive use and control of it but did not own it at the time of the accident.

Although the Sottiles and Auto-Owners argue that the Sottiles never had exclusive use of the vehicle because they merely possessed but did not actually use it, we find their argument to be without merit. We read "exclusive use" as meaning "right to exclusive use". We do not think it is relevant that the Sottiles chose never to use the vehicle. The vehicle remained in their possession from November 1970 until July 2, 1971, and, apparently, no one else used it during that time. Also, by transferring possession of the vehicle to Vermett in exchange for money, the Sottiles indi-

cated that they believed they had had exclusive use and control of the vehicle. Furthermore, the Michigan Supreme Court has given "exclusive use" under MCLA 257.37(a); MSA 9.1837(a), a broad interpretation. See *Ketola v Frost,* 375 Mich 266; 134 NW2d 183 (1965) (holding that a lessee had exclusive use of a vehicle and, therefore, owned it where the lease agreement between lessee and lessor permitted the lessor to use the vehicle at certain times). Consequently, we conclude that the Sottiles had exclusive use of the 1968 Oldsmobile between November, 1970, and July 2, 1971. Because that period was longer than 30 days, we agree with the trial court's conclusion that under MCLA 257.37(a); MSA 9.1837(a), the Sottiles owned the vehicle prior to the time they attempted to sell it to Vermett.

We disagree, however, with the trial court's conclusion that they did not own it at the time of the accident. Michigan cases have consistently held that a dealer retains ownership of a car he sells until he complies with the statutory provisions for transferring title to the purchaser. *Bayer v Jackson City Bank & Trust Co,* 335 Mich 99; 55 NW2d 746 (1952), *Endres v Mara-Rickenbacker Co,* 243 Mich 5; 219 NW 719 (1928), *Messer v Averill,* 28 Mich App 62; 183 NW2d 802 (1970), *Gazdecki v Cargill,* 28 Mich App 128; 183 NW2d 805 (1970). That rule is based on a strong public policy of enforcing the provisions of the Michigan Vehicle Code. *Endres, supra,* explained:

"In view of the purpose and language of the statute, we think it was the intent of the legislature that a sale or transfer of an automobile in violation of the provisions of the act should be void." 243 Mich at 9.

Although the above-cited cases differ from the

instant case in that, in each one, when the dealer transferred possession of the vehicle, he either had or was in the process of procuring title to it, we believe the policy underlying those cases applies to the case at bar. Thus, we must determine whether the Sottiles, in transferring possession of the 1968 Oldsmobile to Vermett, complied with the relevant provisions of the Michigan Vehicle Code.

Because the parties to this action treated the 1968 Oldsmobile as an abandoned vehicle that had been properly delivered to the Sottiles in their capacity as garagekeepers, we will presume that it was a properly delivered abandoned vehicle. Consequently, we must determine whether the Sottiles complied with the provision of MCLA 257.252; MSA 9.1952, which governs abandoned vehicles.

Under that statute, a police agency may deliver an abandoned vehicle to a garagekeeper if the vehicle is either valued at less than $100 or meets the statutory definition of an "abandoned junk vehicle".[1] A garagekeeper in possession of an abandoned vehicle must fulfill certain statutory obligations. The statutory provision regarding abandoned vehicles worth less than $100 states:

"[T]he garagekeeper * * * may apply for a title for

---

[1] MCLA 257.252; MSA 9.1952 provides:

"(g) For purposes of this section, a vehicle is deemed an abandoned junk vehicle when it meets all of the following requirements:

"(i) It has remained on a public street or highway or other place open to travel by the public for a period of 48 hours or more, without notification by the registered owner to the police agency of the reasons for leaving the vehicle in the public place, or it has remained on private property for a period of 48 hours or more without the consent of the owner or lessee of the property, or for a period of 48 hours or more after the consent has been revoked.

"(ii) It is 4 or more years old and has a fair market value of $100.00 or less.

"(iii) It is apparently inoperable and is extensively damaged, including but not limited to a broken window or windshield, missing wheels, tires, motor or transmission.

"(iv) It does not display current year registration plates."

the vehicle in his own name. When a vehicle is turned over to a garagekeeper by a police agency, the garagekeeper shall notify the department [of state], on a form prescribed by it, within 10 days of the date the vehicle is delivered into his custody. * * * If the department finds that the vehicle is not currently registered in this state, the department shall notify the garagekeeper. Thereafter, *the garagekeeper may sell the vehicle at public auction after publishing, at least once, in a newspaper printed and circulated in the county in which the vehicle was abandoned, a notice containing a description of the vehicle, reciting that it is deemed an abandoned vehicle, and that it will be sold at public auction at a time and place specified therein, not less than 30 days after date of the publication.*" (Emphasis supplied.)

The Sottiles never complied with this statutory provision. They did not sell the 1968 Oldsmobile at a public auction. Instead, they sold it privately to Vermett.

The statutory provision regarding abandoned junk vehicles states:

"Within 24 hours after it is determined that the vehicle was not stolen, the police agency shall release the vehicle to a garagekeeper * * * which shall then transmit that release to a branch office of the secretary of state and apply for a certificate of junking. Upon receipt of such release and application, that branch office shall issue forthwith a certificate of junking. * * * After the certificate of junking has been issued, the garagekeeper * * * may dispose of the abandoned junk vehicle."

The Sottiles also failed to comply with that statutory provision. They admitted, at trial, that they never applied for a certificate of junking.

Because they never fulfilled the statutory requirements for disposition of an abandoned vehi-

cle, the Sottiles remained the owners of the 1968 Oldsmobile. The sale of the auto to Vermett did not divest them of ownership. Consequently, we conclude that the Sottiles owned the 1968 Oldsmobile at the time of the accident between Vermett and Daniels.

But, that holding is not sufficient to establish liability of the Sottiles under MCLA 257.401; MSA 9.2101. Under that statute, an owner is liable for the negligent operation of his motor vehicle only if that vehicle was driven with his express or implied consent or knowledge. The trial court made no finding on this issue, and the record does not clearly establish whether there was consent. Although there was testimony that Vermett regularly bought wrecked cars and repaired and sold them, Joseph Sottile testified that he sold this vehicle to Vermett for parts only. Thus, although we conclude that the trial judge erred in holding that the Sottiles did not own the 1968 Oldsmobile at the time of the accident, we remand the case for a determination of the consent issue.

## II

*Is Security liable to Daniels for any injuries resulting from Vermett's negligent operation of the 1968 Oldsmobile, and does it owe a duty of defense to Vermett under the insurance policy issued by it to him?*

Daniels argues that Security would be liable under the insurance policy issued by it to Vermett, d/b/a Custom Radiator Shop, for any injuries to Daniels that resulted from Vermett's negligent operation of the 1968 Oldsmobile. That policy provided Vermett with the following coverage:

"I. Garage Liability

"Coverage G—Bodily Injury Liability

"Coverage H—Property Damage Liability

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"G. bodily injury or

"H. property damage

"to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the schedule".

Vermett purchased insurance against "automobile hazard 2", which the policy defines as follows:

"The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein or a member thereof, or a member of the same household as any such person."

Because "automobile hazard 2" applies only to vehicles not owned by the named insured, Security would not be liable to Daniels and would not owe a duty of defense to Vermett if Vermett owned the 1968 Oldsmobile. The trial court found that Vermett did own that vehicle and, because that finding has not been challenged on appeal, we presume it to be correct.[2]

Daniels argues that although Vermett owned the 1968 Oldsmobile pursuant to MCLA 257.37(a); MSA 9.1837(a), he did not "own" it within the meaning of the insurance policy. Yet, he does not explain why the vehicle should be viewed as not owned under the insurance policy. We believe that the term "owned" means the same under the

[2] Ownership need not be exclusive. *Messer v Averill,* 28 Mich App 62; 183 NW2d 802 (1970). Therefore, the Sottiles and Vermett could simultaneously own the 1968 Oldsmobile.

insurance policy as it does under the statute. Consequently, the 1968 Oldsmobile was an "owned" car within the meaning of the insurance policy. The trial judge was correct, therefore, in ruling that Security would not be liable to Daniels and would owe no duty of defense to Vermett.

### III

*Is DAIIE liable to Daniels for any injuries resulting from Vermett's negligent operation of the 1968 Oldsmobile, and does it owe a duty of defense to Vermett under the insurance policy issued by it to him?*

The insurance policy issued to Vermett by DAIIE provided that DAIIE would:

"pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury * * * injury to or destruction of property * * * arising out of the ownership, maintenance or use * * * of the owned automobile or of any non-owned automobile".

Under the heading "General Provisions, Conditions and Exclusions", the policy provided:

"The Exchange hereby grants an option to the named insured to purchase an original policy on an 'additional automobile' effective on the date of the acquisition of the vehicle with the same coverages and with limits not in excess of those provided in this policy, provided application is made for such coverage within 30 days of the acquisition of the vehicle, and provided the named insured elects to exercise such option under this and no other policy of the Exchange or Motor Land Insurance Company."

The policy further provided, under the heading "Definitions:"

"(h) 'additional automobile' means an additional automobile, other than a replacement automobile, ownership of which is acquired after the effective date of this policy by a named insured, provided the Exchange or Motor Land Insurance Company insures all automobiles of such named insured on the date ownership is acquired."

Vermett admitted that he never requested DAIIE to insure the 1968 Oldsmobile. Consequently, the trial court held that the DAIIE insurance policy did not cover the 1968 Oldsmobile.

Daniels argues that although Vermett acquired the Oldsmobile in July, 1971, it was not, at that time, an automobile within the meaning of DAIIE's additional automobile clause because it was inoperable. He argues that it did not become an automobile, and, consequently, the 30-day period did not begin to run, until September 15, 1971, the day of the accident.

Although the trial judge concluded that the Oldsmobile was an automobile at the time Vermett obtained possession of it, we need not determine whether that holding was correct. If the Oldsmobile was an automobile at that time, the DAIIE policy did not cover it because Vermett failed to apply for coverage within 30 days of acquiring the vehicle. On the other hand, if it was not an automobile until the date of the accident, the DAIIE policy still would not cover the Oldsmobile because Vermett did not comply with the policy by applying for coverage within 30 days of that date. Consequently, we hold that the trial judge was correct in holding that the DAIIE policy did not cover the 1968 Oldsmobile. Thus, DAIIE

could not be held liable for Daniels' injuries and had no duty to defend Vermett.

Daniels also argues that the additional automobile clause is void as against public policy. We find no merit to that argument. In support of his argument, Daniels cites *Allstate Insurance Co v Motor State Insurance Co,* 33 Mich App 469; 190 NW2d 352 (1971), which does not control the case at bar. In that case, an automobile liability insurance policy listed Judith and Norman Bangs as named insureds of a policy covering a 1964 Ford but also listed Norman Bangs as an excluded driver. This Court held that because MCLA 257.520(b)(2); MSA 9.2220(b)(2) provides that an insurance policy "shall insure the person named therein", the liability policy failed to conform to the statutory requirements and, consequently, the exclusionary clause was void as contrary to public policy.

The instant insurance policy, however, contains no provision excluding the named insured from coverage as to any insured automobile and, thus, complies with the statute. In fact, if anything, it goes beyond the statutory requirements by providing that the named insured may procure coverage for additional automobiles. Consequently, the instant policy is not void as contrary to public policy.

IV

*Is Auto-Owners liable to Daniels for any injuries resulting from Vermett's negligent operation of the 1968 Oldsmobile, and does it owe a duty of defense to Vermett under the policy issued by it to the Sottiles?*

The trial judge, in his findings of fact and conclusions of law, stated that "[i]nasmuch as Sottiles

were not the owners of the Oldsmobile at the time of the collision, its policy is not applicable and it has no duty to defend in the companion case". He made no ruling as to whether Auto-Owners would be liable to Daniels if, at the time of the accident, the Sottiles owned the car and had consented to Vermett's use of it. This Court does not pass on questions not decided by the lower court. *Enyart v Enyart,* 7 Mich App 328; 151 NW2d 849 (1967). Because we reversed the trial judge's ruling that the Sottiles did not own the Oldsmobile at that time, we must remand the case so that the trial court can determine whether, in light of our holding on the ownership issue, Auto-Owners would be liable if the Sottiles could be held liable to Daniels. The attorney who represents Auto-Owners on this matter also represents the Sottiles. Because Auto-Owners and the Sottiles appear to have conflicting interests regarding this issue, we recommend that, on remand, the Sottiles obtain their own attorney to represent them.

## V

*Are the insurance companies involved in this litigation estopped from denying liability for the injuries to Daniels?*

Daniels argues that the insurance companies involved in the instant litigation are estopped from denying liability because no evidence was presented at trial that the insurance companies gave "reservation of rights" letters to Vermett. Daniels relies on *Meirthew v Last,* 376 Mich 33; 135 NW2d 353 (1965), which held that a notice given to an insured by his insurer, stating that the insurer would defend him in an action brought against him but would reserve rights to rely upon certain policy provisions, was legally insufficient

because it was vague, uncertain, and too late to prevent prejudice to the insured's rights. Therefore, in an action by the injured party against the insurer to enforce a judgment recovered against the insured, the insurance company was estopped from relying on insurance policy exclusions.

The Court, in *Meirthew, supra,* was concerned that the insurance company, by defending the insured in the principal suit but not informing him of specific defenses upon which it later intended to rely to avoid liability, denied the insured a fair and timely opportunity to protect his rights. In the instant case, however, the very reason for bringing the declaratory judgment action was to decide those issues prior to trial and, consequently, avoid prejudicing the rights of any insured party. Thus, because the instant declaratory judgment action is a suitable alternative to a "reservation of rights" letter, *Meirthew, supra,* is not applicable to the instant case.[3]

Furthermore, at trial, Security attempted to introduce evidence establishing that it sent a "reservation of rights" letter to Vermett. The trial judge did not permit Security to introduce that evidence because he apparently considered the letters to be immaterial to the declaratory judgment action. In light of those circumstances, we conclude that the insurance companies are not estopped from denying liability for the injuries to Daniels.

Reversed and remanded for further proceedings not inconsistent with this decision. Costs to prevailing parties.

---

[3] The *Meirthew v Last,* 376 Mich 33, 37; 135 NW2d 353 (1965), Court suggested that a declaratory judgment action would have prevented the problem of that case. The Court explained that the trial judge reacted negatively to the insurance company's continued control over the insured's defense because it denied him a "fair and timely opportunity to protect his rights * * * by a before-trial suit for declaration of rights against his insurer * * * ".