**SHELTER MUTUAL INSURANCE COMPANY, A Corporation, Plaintiff–Appellant,**

v.

**Michelle Evelyn BAKER, Defendant,**

**and**

**Robert W. Turner, a minor, by his Guardian ad Litem William R. Turner, and William R. Turner, Defendants–Respondents.**

**No. 15343.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 13, 1988.

Kenneth H. Reid, Sherry A. Rozell, Turner, Reid, Duncan, Loomer & Patton, Springfield, for plaintiff-appellant.

Jack Hoke, Hoke & Miller, Springfield, for defendants-respondents.

PREWITT, Presiding Judge.

Plaintiff sought declaratory judgment determining the rights and liabilities of the parties as they related to automobile insurance policies issued by plaintiff to Willie F. Baker. The trial court found that those policies provided liability insurance coverage for Michelle Baker, Willie F. Baker's daughter, while she was operating an automobile which was involved in a collision. Mr. Baker had purchased the automobile eight days before the collision. Plaintiff appeals.

Willie F. Baker owned two motor vehicles on May 7, 1984. Liability coverage for each automobile was furnished by separate policies issued by plaintiff. Each policy contained the following provision:

## VII—AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES

The insurance afforded by this policy with respect to the described automobile applies to any other automobile of which the named insured or spouse acquires ownership if it replaces the described automobile or is an additional automobile and the Company insures all automobiles owned in whole or in part by the named insured and spouse on date of such acquisition; provided that the named insured or spouse notifies the Company while this policy is in force and within 30 days after the date of such acquisition of his election to make the insurance afforded by this and no other policy affording similar insurance issued by the Company applicable to such automobile. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or spouse has other collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to any newly acquired automobile.

On May 7, 1984, Willie F. Baker purchased a 1975 Ford. The car was for Michelle, then 16 or 17 years old, to drive, primarily to work. Willie F. Baker, his wife, and Michelle, lived on a rural route outside Springfield. Michelle worked in Springfield. On May 15, 1984, while Michelle was operating the vehicle, it left the roadway, overturned, and a passenger, defendant Robert W. Turner, was injured. She and Turner had been to her house and were going to Willard to take his mother a bowling ball. On that day the two insurance policies issued by plaintiff to Willie F. Baker were still in effect. When her father refused to notify plaintiff of the accident, Michelle did. The only reference in the record as to when she notified plaintiff was a question put to Willie F. Baker. He was asked if Michelle had notified plaintiff "very shortly after the accident while Mr. Turner was still in the hospital?" He replied, "Yeah, I think it was." How long Mr. Turner was in the hospital was not established.

Willie F. Baker testified that Michelle was not to drive the car until she acquired insurance on it. She was to purchase her own insurance. Mr. Baker said he did not notify plaintiff of the purchase of the 1975

Ford as he never had any intention of having the vehicle included on his other insurance policies. He said Michelle did not have his permission to operate it at the time of the collision. After the automobile was purchased he no longer took Michelle to work and school as he had done previously. He said he did not know how she got there. His wife did not drive.

Michelle Baker testified that after the car was purchased she kept the keys and drove it to school, to work and other places. She said that her father was aware of this and she had his permission to drive it but he urged her to be careful until she acquired insurance.

Plaintiff states in its first point that the trial court erred in "holding that the policy provision relating to newly acquired vehicles should be interpreted so as to extend coverage to Michelle Baker when the named insured, Willie F. Baker (1) had no intention of electing to make the insurance afforded by the policies applicable to the 1975 Ford, (2) did not notify the company within 30 days after the date of acquisition of the vehicle of an election to make the insurance afforded by the Shelter Mutual Insurance Policies applicable to such automobile, and (3) did not pay an additional premium for the addition of another vehicle, all of which are prerequisites to coverage of a newly acquired vehicle under said policies."

The parties have not cited any Missouri cases with similar facts. Plaintiff relies upon three cases arising in Florida which denied insurance coverage. However, neither *Garrote v. Liberty Mutual Insurance Co.*, 496 F.2d 1168 (5th Cir.1974), nor *Johnson v. Travelers Indemnity Co.*, 438 So.2d 1045 (Fla.App.1983), as far as we can tell, explains whether the collisions occurred within the time of the 30 day notice requirement of the policies there in question, or thereafter.

*Lowe v. State Farm Mutual Automobile Insurance Co.*, 420 So.2d 318 (Fla.App. 1982), involved a vehicle which was involved in a collision five days after its purchase. The insurance company had not been notified of that vehicle. With almost no discussion the court found that the failure of the insured to notify the insurer of the acquisition of the car prevented it being qualified for coverage as a "newly acquired car". 420 So.2d at 319.

Three Missouri cases contain language indicating that coverage under newly acquired automobile provisions of an automobile liability policy comes into effect automatically and that if notice is given in accordance with those provisions, the policies' coverage continues after the notice period. See *Hall v. Weston*, 323 S.W.2d 673, 676 (Mo.1959) (vehicle was covered for 29 days without any action on insured's part); *Missouri Managerial Corp. v. Pasqualino*, 323 S.W.2d 244, 249 (Mo.App. 1959) (coverage automatically transferred to new vehicle for 30 days and would continue if, within that period, the insurance company was notified); *Union Automobile Indemnity Ass'n v. Reimann*, 171 S.W.2d 721, 725 (Mo.App.1943) (coverage "unquestionably" afforded without notice of the purchase until notice period expires). As none of these cases involved collisions occurring within the notice period, these statements could be considered as dictum.

■ It appears to be the overwhelming weight of authority "that under an automatic insurance clause requiring an insured to give notice to an insurer within a specified time following his acquisition of ownership or acceptance of delivery of a replacement or additional vehicle, such newly acquired vehicle is automatically covered for liability arising from the operation thereof during such notice period" without notice or the payment of an additional premium. See Annotation, Construction and Application of "Automatic Insurance" or "Newly Acquired Vehicle" Clause ("Replacement", and "Blanket," or "Fleet" Provisions) Contained in Automobile Liability Policy. 39 ALR 4th 229, 302–307 (1985). *Lowe* and the other cases cited by plaintiff, if on point, apparently follow the minority view.

We believe the majority position is correct and should be followed. The purchase of a vehicle could often take place at a time when it was impossible or at least impracti-

cal to notify an insurance company of its purchase. That could continue for several days after its purchase. If notice is required then the policy would not provide "automatic insurance for newly acquired automobiles" as the provision is titled. Notice would be required as in any other change of coverage. In addition, as the trial judge has stated in his findings, it is illogical for coverage to be afforded retroactive to a collision by the giving of notice and the paying of a premium.

What Mr. Baker may have intended regarding coverage does not change the result. The express terms in a policy providing newly acquired automobile coverage apply and provide coverage within the notice period, notwithstanding the insureds' intention that other insurance be acquired for the vehicle by their sibling, *Dolan v. Welch*, 462 N.E.2d 794, 797–798 (Ill.App. 1984), or the insured's intention not to insure the newly acquired automobile, *Central National Insurance Co. v. LeMars Mutual Insurance Co.*, 294 F.Supp. 1396, 1401 (S.D. Iowa 1968).

■ Any understanding between plaintiff and Willie F. Baker after the collision is irrelevant. Turner's rights regarding the policies commenced at the time of the collision. Under § 379.195, RSMo 1978, where a casualty is covered by liability insurance, the right of the injured person to insurance proceeds following judgment attaches as of the date of the occurrence. *State ex rel. McCubbin v. Ginn*, 347 S.W.2d 119, 125 (Mo. banc 1961) (Storckman, J., concurring, with the concurrence of a majority of the court). See also *Pennsylvania Casualty Co. v. Phoenix*, 139 F.2d 823, 827 (10th Cir.1944) (under Missouri law the rights of an injured party under automobile liability insurance cannot be impaired by subsequent agreement or collusive action of the insured and insurer).

The insurance applied to the 1975 Ford for 30 days without the necessity of notice or the payment of an additional premium. Willie F. Baker's intention not to have it covered thereafter, or even before, does not prevent that coverage. This point is denied.

Plaintiff states in its remaining point that the trial court erred in finding that Michelle Baker had permission to drive the 1975 Ford at the time of the collision because it was against the weight of the evidence as the insured stated that she did not have permission. Such permission is required under the terms of the policy to provide coverage to her for that collision.

■ Permissive use of a vehicle under an omnibus clause of an automobile insurance policy may be either express or implied. *Hauser v. Hill*, 510 S.W.2d 765, 767 (Mo. App.1974); *Kemp v. MFA Mutual Insurance Co.*, 468 S.W.2d 700, 704 (Mo.App. 1971). Among the situations which may show implied permission is a common practice or course of conduct whereby the owner acquiesces in the practice of another operating his automobile. *Kemp*, supra, 468 S.W.2d at 704. Such implied permission is provable by circumstantial evidence. Id.

■ The existence of implied permission to use a vehicle is a factual matter depending upon the facts of each case. *Wells v. Hartford Accident and Indemnity Co.*, 459 S.W.2d 253, 258 (Mo. banc 1970). See also *State Farm Mutual Automobile Insurance Co. v. Foley*, 624 S.W.2d 853, 856 (Mo.App.1981) (permission of the named insured is a factual determination).

■ Willie F. Baker and Michelle Baker both stated that she had possessed the keys since the car was purchased and that the main reason for purchasing the vehicle was so he would not have to drive her to work. After the purchase of the vehicle he no longer drove her to work. It was undisputed that she drove the vehicle to school and other places. He says that he was unaware of it and she did not have his permission. She said that he knew she had been driving the car to school, to work, and other places and that he merely told her "to be careful because there wasn't no insurance on it".

It seems unlikely that he did not know she was operating it during the 8 days that she had the keys with her, and that he did not know how she was getting to school

and to work, when he had previously been taking her. He was living at home with her and her mother who did not drive. There was a basis for the trial court to find that if express permission was not given, at least tacit approval to her driving the vehicle occurred.

Credibility is generally a question for the trial court. *Ryan v. Tinker,* 744 S.W.2d 502, 503 (Mo.App.1988). Under the circumstances present it was reasonable for the trial court to believe Michelle Baker. This court should set aside a judgment on the ground that it is against the weight of the evidence with caution and only when we have a firm belief that the judgment is wrong. Id. We have no such firm belief here. This point is denied.

The judgment is affirmed.

HOGAN and FLANIGAN, JJ., concur.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I respectfully dissent. In doing so I acknowledge that, as stated in the majority opinion, the weight of authority is

‘that under an automatic insurance clause requiring an insured to give notice to an insurer within a specified time following his acquisition of ownership or acceptance of delivery of a replacement or additional vehicle, such newly acquired vehicle is automatically covered for liability arising from the operation thereof during such notice period’ without notice or the payment of an additional premium.

However, I do not find that authority logically persuasive or controlling in respect to the terms of the policy and facts involved in this case.

The pertinent language of the policy involved in many of the cases underlying the above line of authority was that the insurance applied to a newly acquired automobile, if the company insured all automobiles owned by the insured, provided the insured gave notice of the acquisition within a specified number of days. See *Ash–Grove L. &*

*P. Cement Co. v. Southern Surety Co.,* 225 Mo.App. 712, 39 S.W.2d 434 (1931); Annot., Automobile Insurance—Substituted Cars, 34 A.L.R.2d 936 (1954). Other policies extended coverage to newly acquired automobiles by including them in the definition of the insured or owned automobile, if such notice was given. *American Standard Insurance Co. of Wis. v. Rider,* 475 S.W.2d 418 (Mo.App.1971); *Consumers United Ins. Co. v. Johnson,* 26 Wash.App. 795, 614 P.2d 657 (1980). Many cases merely referred to automatic coverage if notice is given within 30 days. See *Central National Ins. Co. v. LeMars Mutual Ins. Co. of Iowa,* 294 F.Supp. 1396 (S.D.Iowa 1968); *Georgia Mut. Ins. Co. v. Criterion Ins. Co.,* 131 Ga.App. 339, 206 S.E.2d 88 (1974). The language referred to above requires no action on behalf of the insured except to give notice. The policy declares the insurance afforded thereby is extended to an additional vehicle upon its acquisition. No penalty is prescribed in the event the insured fails to give the required notice. Therefore, it could, with some degree of logic, be said the notice was a condition subsequent to the extension of the insurance beyond the notice period. See *Ash–Grove L. & P. Cement Co. v. Southern Surety Co.,* supra.

However, that construction is not mandatory. See *Lowe v. State Farm Mut. Auto. Ins. Co.,* 420 So.2d 318 (Fla.Dist.Ct.App. 1982). There is no legal prohibition against a policy provision which makes the initial extension of a policy conditioned upon some subsequent act of the insured. "The Garrote policy is clear on its face, however. For an after-acquired vehicle to be covered by the insurance policy, the insured must notify the insuror within 30 days of the vehicle's acquisition. This Garrote failed to do. The District Court did not err in denying coverage." *Garrote v. Liberty Mutual Insurance Company,* 496 F.2d 1168, 1170 (5th Cir.1974). *See Security Ins. Co. of Hartford v. Daniels,* 70 Mich. App. 100, 245 N.W.2d 418 (1976).

The language of the clause in question is significantly different from the language

referred to above. That difference is contained in the following extract.

> The insurance afforded ... applies to any other automobile of which the named insured ... acquires ownership if it ... is an additional automobile ...; provided that the named insured ... notifies the Company ... within 30 days after the date of such acquisition *of his election to make the insurance afforded by this and no other policy affording similar insurance issued by the Company applicable to such automobile.* (emphasis added)

By the plain terms of this clause the insurance afforded by the policy is not automatically extended to a newly acquired automobile. It is so extended only upon the condition the insured elects to make it applicable. It is not forced upon him. The term "election" requires an affirmative choice by the insured. This language has often been contained in policies involved in cases in which it has been considered or not regarded as controlling. The general rule has been restated and applied. See *Worsham v. Walker*, 498 So.2d 260 (La.App. 1 Cir. 1986).

However, the significance of the requirement of an election has been recognized. *In State Farm Mutual Automobile Insurance Co. v. Gigon*, 437 F.2d 1329 (5th Cir. 1971), tort plaintiffs contended two existing policies should be "stacked" and made applicable to a newly acquired automobile. The policy provided that if more than one policy could be applicable to such automobile, the insured should elect which would apply. In denying the tort plaintiffs' contention the court said, "When the Lincolns acquired the second Dodge automobile State Farm's policy plainly required them as the named insured to make an election since, at that time, they held two policies which could afford coverage." Id., at 1331. In *Beck v. Aetna Casualty and Surety Company*, 38 Colo.App. 77, 553 P.2d 397 (1976), the court held an existing policy was not applicable because the insured obtained a second insurance policy specifically applicable to a newly acquired automobile. In so holding the court said, "The insureds, having elected to obtain specific coverage on the Chevelle, lost their right to elect coverage under the larger policy." Id. 553 P.2d at 399.

The requirements of an election by the insured are also emphasized by the following provision of that clause: "The named insured shall pay any additional premium required because of the application of the insurance to any newly acquired automobile." This provision makes it clear the "premium required because of the application of the insurance to any newly acquired automobile" is for a period commencing on the date of acquisition of the newly acquired automobile. That is the date of the application of the insurance. It is unrealistic to hold that the insurance applicable to a Yugo would also be applicable to one or more newly acquired Jaguars, even for 30 days, without an appropriate additional premium. *Contra Worsham v. Walker*, supra. The insured should be given the option to determine which, if any, insurance is to be applicable and whether or not he is to be liable for an additional premium. See *Miller v. New Amsterdam Casualty Company*, 245 N.C. 526, 96 S.E.2d 860 (1957). I believe that it should be held that if an election is made, the insurance is applicable from the date of acquisition. But, if that election is not made, the insurance is not applicable.

"A policy of insurance must be construed as a whole and every clause must be given some meaning if it is reasonably possible to do so." *Brugioni v. Maryland Casualty Company*, 382 S.W.2d 707, 712 (Mo.1964). To construe the policy to extend the insurance for 30 days without any action by the insured is to give no meaning to the phrase "requiring an election."