PROGRESSIVE NORTHWESTERN INSURANCE COMPANY, Respondent,

v.

Leona WILSON, Personal representative for the Estate of David C. Shroder, Sandra Shroder, Edward C. Meads and William K. Schilb, Respondents,

and

State Farm Mutual Automobile Insurance Company Intervenor/Appellant.

No. WD 55626.

Missouri Court of Appeals, Western District.

March 31, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1999.

Application for Transfer Denied Aug. 24, 1999.

J. Christopher Spangler, Sedalia, for State Farm.

Daniel N. Allmayer, Kansas City, for Progressive Northwestern.

Michael X. Edgett, Clinton, for Meads and Schlib.

Leona Wilson acting pro se for estate.

Before RIEDERER, P.J., LOWENSTEIN and LAURA DENVIR STITH, JJ.

ALBERT A. RIEDERER, Presiding Judge.

State Farm Mutual Automobile Insurance Company appeals from the summary judgment entered in a declaratory judgment action. The circuit court ruled that Progressive Northwestern Insurance Company's automobile liability policy did not provide insurance for David Shroder for his liability arising out of the ownership, maintenance or use of the vehicle he was operating at the time of his automobile accident on August 3, 1995.

**Factual & Procedural Background**

On January 31, 1995, David Shroder traded in his 1983 model Ford F–150 pickup for a 1990 Ford F–150. Shroder had maintained, for some time, an auto liability insurance policy ("policy") under which Progressive Northwestern Insurance Company ("Respondent") insured him for up to $25,000.00 per person and $50,000.00 per accident. On February 22, 1995, Shroder renewed the policy for a premium of $368.00: $335.00 for liability coverage and $33.00 for uninsured motorist coverage. The renewed policy was apparently identical to the policy provided for the immediately preceding period, and it provided coverage from February 22, 1995 to August 22, 1995. However, the renewed policy did not list the 1990 pickup as the insured vehicle; rather, it continued to list

Shroder's formerly owned 1983 pickup as the insured vehicle. The renewed policy included the following language:

We will pay, on behalf of an insured person, damages, other than punitive damages, exemplary damages, or attorney fees for which any Insured person is legally liable because of bodily injury and property damage caused by accident and arising out of the ownership, maintenance or use of your Insured car or utility trailer. (emphasis added)

"Your Insured Car" was defined as:

Any car described in the Declarations and any private passenger car or utility car you replace it with. If you want Coverage to apply to the replacement you must notify us within 30 days of its acquisition.

"Insured person" was defined in the policy as including:

1. You or a relative while driving your Insured car.

2. You while driving any private passenger car other than your Insured car.

A policy provision excluding liability coverage under certain circumstances stated:

Liability coverage does not apply to:

10. Bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or a relative.

On August 3, 1995, while driving his 1990 pickup, Shroder was involved in a two-car collision with an auto carrying Messrs. Meads and Schilb. At no time prior to this incident had Shroder informed Respondent Progressive Northwestern that the vehicle listed as the insured car in the policy's declarations had been replaced by a 1990 model truck, and Respondent may not have been apprised of such fact until sometime between August 3 and September 20, 1995. Respondent, however, retained Shroder's payment ($368) even after learning of the replacement. At the time of the accident, Mr. Meads owned uninsured motorist coverage provided by State Farm Mutual Automobile Insurance Company ("Appellant") for up to $100,000.00 per accident.

On February 22, 1996, Respondent Progressive Northwestern filed a petition for declaratory judgment with the Circuit Court of Henry County, seeking a declaration that it was not obligated to provide Shroder any liability coverage for the accident on August 3, 1995. Specifically, Respondent argued that since the replacement vehicle (the 1990 pickup) was not named in the policy, said vehicle was not an "insured car" within the policy's meaning. Respondent further contended that since Shroder did not notify Respondent of the replacement vehicle within 30 days after its acquisition, said vehicle did not automatically become an "insured car" within the Policy's meaning in light of its replacement car provision. Respondent filed a motion for summary judgment on July 3, 1996, to which Mr. Shroder filed a reply and a counter-motion for summary judgment.

On March 5, 1997, Appellant State Farm Mutual moved for leave to intervene in the declaratory judgment action because a finding that Respondent Progressive Northwestern was not liable to Shroder would, in turn, render State Farm liable to Meads and Schilb under Meads' uninsured motorist coverage. The motion to intervene was granted on March 10. On February 23, 1998, the circuit court entered judgment sustaining Respondent's summary judgment motion and denying Shroder's counter-motion for summary judgment. In doing so, the circuit court found the following:

1. Because no notice was given to Respondent by Shroder within the 30 days after he acquired the replacement car, liability coverage was not created for Shroder's use of it.

2. The fact that Respondent was probably not prejudiced by the lack of notice is irrelevant to the issue of whether coverage was created.

3. The public policy of Missouri, vis-a-vis section 303.190 of the Motor Vehicle Safety Financial Responsibility Law, did not compel Respondent to provide minimal limits of coverage for any vehicle that Shroder operated, but, rather, only for anyone operating the "insured car" as defined by the Policy.

4. Respondent neither waived nor was estopped from raising any of its defenses against coverage, because the doctrines of waiver and estoppel cannot be used to create coverage or to provide rights not otherwise afforded by Respondent's insurance contract.

5. The return of that portion of premium providing for liability coverage arising from the use of the "insured car" was not a condition precedent to Respondent's denial of coverage, but a return of said portion was required of Respondent upon the determination that no such coverage ever existed.

This appeal ensued.

State Farm Mutual raises three points on appeal. First, it claims that denying Shroder liability coverage for failing to notify Progressive Northwestern of the replacement vehicle within 30 days of its acquisition violates the intent and purpose of Missouri's Motor Vehicle Financial Responsibility Law ("MVFRL"). State Farm claims that the purpose of MVFRL is to make sure that persons injured by a negligent motorist may collect damages within statutory limits, and that the ruling of the trial court thwarts that purpose. Second, State Farm claims that Shroder's notification to Progressive Northwestern of the replacement vehicle was, at most, a condition subsequent to coverage, which, therefore, placed the burden upon Progressive Northwestern to plead and prove that it was prejudiced by the lack of notification. State Farm claims Progressive failed to plead and prove that it was prejudiced and that, in fact, it was not so prejudiced. Third, State Farm claims that Progressive Northwestern has waived the defense – or is estopped from asserting the defense – of Shroder's failure to notify Progressive

Northwestern of a replacement vehicle, because Shroder paid his premium, Progressive Northwestern accepted the premium and Progressive Northwestern continued to retain the premium long after it became aware that Shroder was operating the 1990 Ford a the time of the accident in question. Because we find Appellant State Farm's second point dispositive, we address only the issues raised therein.

## Standard of Review

■ The standard of review of summary judgment is "essentially *de novo.*" *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The appellate court will review the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when a movant demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 74.04. Here, there are no genuine issues of material fact. Therefore, we determine whether the movant is entitled to judgment as a matter of law.

## Discussion

In its second point on appeal, Appellant argues that the replacement car provision of Shroder's renewed insurance policy is an "automatic insurance clause." As such, the liability coverage provided in the renewed policy automatically attaches to Appellant's replacement vehicle because notification of the existence of a replacement vehicle is not a condition precedent to creating a valid insurance contract. Furthermore, Appellant contends that since Respondent admittedly was not prejudiced by Appellant's failure to notify Respondent of the replacement auto, Appellant's failure to notify did not absolve Respondent of its duty to insure Appellant under the contract.

Respondent counters that since the renewal insurance policy which became effective February 22, 1995, listed the 1983

model pickup instead of the 1990 model pickup that had been acquired on January 31, 1995, no policy of "owner's" coverage was created February 22 or anytime thereafter. As previously described, the policy defined the "insured car" as being either the car listed in its declarations or that car's replacement if notification is made to Respondent within 30 days of its acquisition. Therefore, Respondent maintains that since Shroder's replacement auto was not listed in the declarations and Respondent was not notified of it within 30 days of its acquisition, the 1990 pickup was not an insured car under the policy's terms. Respondent further argues that *American Standard Insurance Co. of Wisconsin v. Rider*, 475 S.W.2d 418, 423 (Mo.App.1971), provides that the duty to comply with the notification provision is an act required to bring about coverage and the existence of a contract. Respondent claims that the presence of prejudice is only required to justify forfeiture of existing coverage, but the absence of prejudice cannot be used to create coverage that does not otherwise exist. *Id.*

■ The creation of a contract necessitates a meeting of the minds. *Brand v. Boatmen's Bank of Cape Girardeau*, 824 S.W.2d 89, 91 (Mo.App.1992). To determine whether a "meeting of the minds" occurred and an agreement reached, we look to the intention of the parties as expressed in their words or acts. *Id.* In the case of insurance, the elements of a contract are (1) subject matter, (2) risk or contingency insured against, (3) the amount of the coverage, (4) the duration of the risk, and (5) the amount of the premiums to be paid for the protection afforded. *Burckhardt v. General American Life Insurance Co.*, 534 S.W.2d 57, 65 (Mo.App.1976). Of these elements, only the risk insured against (2) is disputed by Respondent, who claims that there is no agreement on that element. Respondent contends that no renewed contract for insurance ever came into existence, because in issuing a renewal policy to Shroder, Respondent contemplated insuring a 1983 model Ford F–150, not a 1990 model.

However, Respondent concedes that it was not prejudiced by Shroder's failure to inform it of the replacement vehicle. We are therefore left to assume that the respective risks of insuring Shroder's 1983 Ford F–150 and his 1990 Ford F–150 were the same or very similar and, thus, would have commanded similar liability insurance premiums. Accordingly, despite the fact that Shroder replaced the auto listed in his insurance policy, Respondent continued to undertake the same risk that it otherwise would have and continued to accept the same consideration for doing so. Moreover, there is nothing to suggest that Respondent would have refused to insure the replacement car under the same conditions that it agreed to insure the replaced auto. In sum, the respective understandings of the parties were, with respect to the degree of risk to be insured against and the consideration to be paid for such insurance, in effect, accurately reflected in the written renewed policy.

■ In addition, the law in Missouri is "that under an automatic insurance clause requiring an insured to give notice to an insurer within a specified time following his acquisition .. of a replacement or additional vehicle, such newly acquired vehicle is automatically covered for liability arising from the operation thereof during such notice period...." *Shelter Mutual Ins. Co. v. Baker*, 753 S.W.2d 646, 648 (Mo.App.1988). Respondent notes that Shroder acquired his replacement vehicle prior to the beginning of the renewal policy period in suggesting that there was no automatic coverage in this particular case. However, the renewal policy provided that coverage automatically attached to "[a]ny car described in the Declarations and any private passenger car or utility car you replace it with." In this case, the parties agree that the "car described in the Declarations" was replaced by the car which was in the accident. There is no further language in the policy limiting such coverage only to vehicles acquired during the policy period, and the commencement of cover-

age for the replacement auto is not conditioned on notification to the insurer. Rather, the insured party can give notification subsequent to the start of coverage. Thus, notification of a replacement vehicle was not a condition precedent to creating an enforceable insurance contract between Respondent and Shroder.

Additionally, under the prior policy, the thirty days for notification began on January 31 and ended March 2. The policy provided insurance for the 1990 truck beginning on January 31. *Id.* That coverage was still in effect on February 22. *Id.* Thus, on the date the renewed policy took effect, the policy being replaced provided coverage for the 1990 truck. The renewed policy was identical to the prior policy, and the parties intended the same coverage to continue.

For the foregoing reasons, we conclude that a valid contract of liability insurance coverage did take effect on February 22, 1995.

■ We now determine for whether the insurance contract remained in effect beyond the expiration of the notice period. In the case of *Tresner v. State Farm* the Missouri Supreme Court stated:

> Substantial compliance with a policy's notice requirement is sufficient, and a failure to comply in some immaterial respect does not justify the avoidance of liability on the part of the insurer. In determining whether or not an insured was in substantial compliance with a policy's notice provision, the trier of fact must consider whether the insurance company was prejudiced by the delay.

*Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 15 (Mo.1995). In *Tresner,* the insured, Mr. Tresner, sued to receive uninsured motorist benefits under his insurance policy after an accident. State Farm had denied coverage because Tresner failed to report his auto accident within 30 days thereof as the policy mandated. The Missouri Supreme Court ruled that State Farm was required to provide the benefits ordinarily due under Tresner's policy. *Id.* Furthermore, The Missouri Supreme

Court has said that the purpose of notice requirements is merely to prevent the insurer from being prejudiced, "not to provide a technical escape hatch by which to deny coverage in the absence of prejudice ...." *Weaver v. State Farm Insurance Co.,* 936 S.W.2d 818, 820 (Mo. banc 1997). In the present case, Respondent admits that it was not prejudiced by Shroder's failure to timely notify it of the replacement vehicle. While in *Tresner,* the failure to provide notice regarded the occurrence of an accident and in this case involves failure to give notice of an auto replacement, the principle is the same. The law in Missouri mandates that an insurer sustain real, tangible harm as a result of its customer's failure to notify before that insurer is allowed to withhold its policy's benefits. This Respondent has itself admitted that it endured no such harm. Mr. Shroder paid the premium due under the policy, and his failure to notify Respondent of his acquisition of the replacement vehicle did not prejudice the Respondent. Therefore, Shroder's noncompliance with the literal notice provision of his policy is excused, and we find that he substantially complied with that notice provision.

Respondent Progressive Northwestern claims that it was not required to show prejudice. It argues that it would only be required to show prejudice if the failure to give notice had the effect of extinguishing already existing coverage, citing *Weaver v. State Farm Auto. Ins. Co.,* 936 S.W.2d 818 (Mo. banc 1997). However, it argues, there never was any coverage to begin with. It claims that Mr. Shroder's failure to give notice of his replacement vehicle is a failure to do an act that is required to bring about coverage and does not involve a breach of any existing coverage. However, as demonstrated above, there was coverage at the beginning of the policy period. If the coverage disappeared at some time, then it did so as a result of the failure to give notice. And Respondent admits that if the failure to give notice is the basis of forfeiting existing coverage,

then it must show prejudice to enforce that forfeiture. This it has not done.

Respondent also argues that since Mr. Shroder changed vehicles before the last policy period began, there never was any coverage to begin with. Respondent relies on *Lawson v. Traders Ins.*, 946 S.W.2d 298 (Mo.App. S.D.1997). However, although *Lawson* involved an replacement vehicle acquired before the policy period in question, the clause of the insurance policy in that case applied only to replacement vehicles purchased during the policy period. *Id.* at 301. There is no such restriction involved in this case.

We conclude that Mr. Shroder's policy with Progressive Northwestern provided coverage for the automobile accident of August 3, 1995. The judgement of the trial court is therefore reversed, and the case is remanded for entry of judgment consistent with this opinion.

All concur.